**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**

JOHN W. KARCZ, JR and
JENNIFER A. KARCZ

          Plaintiffs,

    vs.

THE CITY OF NORTH TONAWANDA,
c/o Mayor Arthur G. Pappas; THE
COUNTY OF NIAGARA c/o County
Clerk Joseph A. Jastrzemski; WILLIAM R.
LEWIS; SHAWN P. NICKERSON;
WILLIAM R. HALL; THOMAS E.
KRANTZ; ROBERT LABUSHESKY;
KAREN SMITH; TODD BUSH;
ROBERT KOLATA; JAMES
MUEHLBAUER; LAWRENCE
KUEBLER; SCOTT WILLARD;
STEPHEN ENDRES; TERRY HUEY;
LEE BOLSOVER; ROBERT
BOHNSTADT; SHAWN LARSON;
DANIEL MAHONEY; JEFF SHIESLEY;
DARYL E. TRUTY; RICHARD
WYDYSH; AND "NORTH
TONAWANDA POLICE OFFICERS
JOHN DOE I, II, III, IV, V, AND IV and
JANE DOE" of the North Tonawanda
Police Department (NTPD); JAMES R.
VOUTOUR; SCOTT LOMBARDO;
RONALD P. DWORZANSKI; AND
NIAGARA COUNTY DRUG TASK
FORCE OFFICERS JOHN DOE I, II, III,
AND IV (NCDTF) OF THE Niagara
County Sheriff's Department (NCSD);
NIAGARA COUNTY DISTRICT
ATTORNEYS MICHAEL VIOLANTE;
LAURA T. BITTNER; and KEVIN D.
CANALI,

Case No.: CV-**16   CV  628** √

**VERIFIED COMPLAINT**

**DEMAND FOR JURY TRIAL**



UNITED STATES DISTRICT COURT
FILED
AUG 3 2016
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

1

VERIFIED COMPLAINT

### PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiffs, JOHN W. KARCZ, JR and JENNIFER A. KARCZ seek relief for the Defendants' violations of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. § § 1983, by the United States Constitution, including its First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments, and by the laws and the Constitution of New York State. Plaintiffs seek compensatory and punitive damages, injunctive relief, an award of costs, interest and attorney's fees, and such other further relief as this Court deems just and proper.

### JURISDICTION AND VENUE

2. This court has jurisdiction under 28 U.S.C. § 1331 and 1343, over and the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § § 1983 and 1988. The Plaintiffs are seeking redress for violations of their common law, civil and constitutional rights. Venue is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c) because the Defendants are officials of and employees of, or are THE CITY OF NORTH TONAWANDA, or THE COUNTY OF NIAGARA, which are administratively located within the boundaries of the Western District of New York and that the events giving rise to this claim occurred within the boundaries of the Western District of New York. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court so they may form part of the same case or controversy.

2

VERIFIED COMPLAINT

## PARTIES

3.  Plaintiffs are residents of New York State, County of Niagara, with residences at 357 Daniel Drive, North Tonawanda, New York 14120, and 1762 Cudaback Avenue, Niagara Falls, New York, 14303. Return mail address for Plaintiffs is: P.O. Box 1553 M.P.O., Niagara Falls, New York, 14301. Plaintiffs were at all relevant times in this actions residents of Niagara County, New York.

4.  Defendants are residents of New York State, County of Niagara, and employed at 216 Payne Ave, North Tonawanda, NY 14120, for North Tonawanda; and 175 Hawley Street, Lockport, New York, 14094, for Niagara County; and 5526 Niagara Street Ext, Lockport, NY 14094, for Niagara County Sheriff's Department; and, upon information and belief, are using these locations as their mailing addresses.

5.  A. Defendant CITY OF NORTH TONAWANDA is and was at all times relevant herein a municipal entity created and authorized under the laws of the great State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NORTH TONAWANDA assumes the risks incidental to maintaining a police force and the employment of police officers.

    B. CITY OF NORTH TONAWANDA was at all times herein the public employer of Defendants WILLIAM R. LEWIS; SHAWN P. NICKERSON; WILLIAM R. HALL; THOMAS E. KRANTZ; ROBERT LABUSHESKY; KAREN SMITH; TODD BUSH; ROBERT KOLATA; JAMES MUEHLBAUER; LAWRENCE KUEBLER; SCOTT WILLARD; STEPHEN ENDRES; TERRY HUEY; LEE BOLSOVER;

VERIFIED COMPLAINT

ROBERT BOHNSTADT; SHAWN LARSON; DANIEL MAHONEY; JEFF

SHIESLEY; DARYL E. TRUTY; RICHARD WYDYSH; AND "NORTH

TONAWANDA POLICE OFFICERS JOHN DOE I, II, III, IV, V, and JANE DOE.

C. Defendants WILLIAM R. HALL; THOMAS E. KRANTZ; ROBERT

LABUSHESKY; KAREN SMITH; TODD BUSH; ROBERT KOLATA; JAMES

MUEHLBAUER; LAWRENCE KUEBLER; SCOTT WILLARD; STEPHEN

ENDRES; TERRY HUEY; LEE BOLSOVER; ROBERT BOHNSTADT; SHAWN

LARSON; DANIEL MAHONEY; JEFF SHIESLEY; DARYL E. TRUTY;

RICHARD WYDYSH; AND NORTH TONAWANDA POLICE OFFICERS JOHN

DOE I, II, III, IV, V, and JANE DOE are and were at all times relevant herein duly

appointed and acting as officers, servants, employees, and agents of the North

Tonawanda Police Department, a municipal agency of Defendant CITY OF NORTH

TONAWANDA. At all times relevant herein the individual Defendants were acting

under color of the laws, statutes, ordinances, regulations, policies, customs and/or

usages of the State of New York and the North Tonawanda Police Department, in the

course and scope of their duties and functions as officers, agents, servants, and

employees of Defendant CITY OF NORTH TONAWANDA, were acting for and on

behalf of, and with the power and authority vested in them by the CITY OF NORTH

TONAWANDA and the North Tonawanda Police Department, and were otherwise

performing and engaging in conduct incidental to the performance of their lawful

functions in the course of their duties. They are sued individually and in their official

capacity.

D. Defendants WILLIAM R. LEWIS and SHAWN P. NICKERSON are and were at

all times relevant herein duly appointed and acting as officials, servants, employees,

4

VERIFIED COMPLAINT

and agents of Defendant CITY OF NORTH TONAWANDA. At all times relevant herein the individual Defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant CITY OF NORTH TONAWANDA, were acting for and on behalf of, and with the power and authority vested in them by the CITY OF NORTH TONAWANDA, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

E. Defendant COUNTY OF NIAGARA is and was at all times relevant herein a county created and authorized under the laws of the great State of New York. It is authorized by law to maintain a sheriff's department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant COUNTY OF NIAGARA assumes the risks incidental to maintaining a sheriff's force and the employment of sheriff's deputies.

F. Defendant COUNTY OF NIAGARA was at all times herein the public employer of Defendants MICHAEL VIOLANTE; LAURA T. BITTNER; KEVIN D. CANALI; JAMES R. VOUTOUR; SCOTT LOMBARDO; RONALD P. DWORZANSKI; NIAGARA COUNTY DRUG TASK FORCE OFFICERS JOHN DOE I, II, III, AND IV.

G. Defendants MICHAEL VIOLANTE; LAURA T. BITTNER; KEVIN D. CANALI; JAMES R. VOUTOUR; SCOTT LOMBARDO; RONALD P. DWORZANSKI; NIAGARA COUNTY DRUG TASK FORCE OFFICERS JOHN DOE I, II, III, AND IV, upon information and belief, are and were at all times relevant herein duly

VERIFIED COMPLAINT

appointed and acting as officers or officials, servants, employees, and agents of Defendant COUNTY OF NIAGARA. At all times relevant herein the individual Defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant COUNTY OF NIAGARA, were acting for and on behalf of, and with the power and authority vested in them by the COUNTY OF NIAGARA, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

## STATEMENT OF FACTS

6.  This civil suit is in pursuit of fundamental justice to right the wrongs perpetrated against the Plaintiffs as a continuing pattern of abuse and conspiracy by a group of law enforcement officers joined and suborned by officials, a veritable "street gang in blue," in a vendetta of continuing violations led by North Tonawanda Chief of Police William R. Hall, which began on May 24, 2013, and has continued in derivative and unattenuated fashion to the current day. The Plaintiffs are seeking, in part, injunctive relief to bring those who would trample their rights to justice, and in part, economic sanctions to make the Plaintiffs and their family whole by compensating them with money damages for the losses they suffered.

7.  In 2009, the Plaintiffs, John and Jennifer Karcz state that they purchased the "house of

their dreams" on Daniel Drive in North Tonawanda, New York. The primary reason for the purchase was to have privacy for themselves and safety for their first child, who was born the same year. The Karcz's believed the home was in a neighborhood and a city where they could leave their doors unlocked without fear of intrusion. From December 24, 2009 until May 24, 2013, this was very much the case.

8. Beginning on May 24th, 2013, and continuing to the present day, the Defendants both individually and severally have acted in concert, conspiracy, intentional abrogation, and individual disregard for the Laws of the United States of America and with blatant disregard for the constitutional rights afforded the Plaintiffs under the United States Bill of Rights and the Constitution, which is in itself a cause of action.

9. The Defendants acted under Color of State Law to deprive the Plaintiffs of their rights under the Constitution of the United States of America and the Federal law. The Plaintiffs allege the Defendants did so with intent, guilty knowledge, malice aforethought, and arbitrary and capricious indifference to the rights of the Plaintiffs and to the Constitution of the United States of America, which is likewise a cause of action.

10. The Plaintiffs further allege, to wit, that the official Defendants have committed, aided and abetted in the commission, attempted to commit, and/or conspired to commit acts under Color of Law consisting of home invasion, deprivation of privacy, breaking and entering with a deadly weapon, unlawful detention, false imprisonment, false arrest, unlawful arrest, theft, trespassing, burglary, against the Plaintiffs on a variety of dates

VERIFIED COMPLAINT

in violation, abrogation, and/or evisceration of the 1st, 4th, 5th, 6th, 8th, 9th and 14th Amendments of the United States Constitution/42 U.S.C. § 1983 with official knowledge and *Guilty knowledge and willfulness*. By the conduct, acts, and omissions complained of herein, the police Defendants violated clearly established constitutional standards under the 1st, 4th, 5th, 6th, 8th, 9th and 14th Amendments to the United States Constitution of which any reasonable police officer under the circumstances would have known. As stated to follow are the instances elaborating these acts and the causes of action thereto.

11. Additionally, the Plaintiffs allege the Niagara County District Attorney committed malicious prosecution to lend cover to many of the same acts against the Karcz family. The Judge of the City of North Tonawanda also advanced his assent thereto. Thereby depriving and conspiring to deprive the Plaintiffs of their rights under Color of Law, their civil rights, their constitutional rights, and substantial justice, life, liberty, and property; as well as denying the rights to seclusion, substantial dignity, and freedom from improper and undue publicity, and coerced self-incrimination.

12. Beginning on May 24, 2013, members of the North Tonawanda Police Department, Defendants herein, illegally entered the Plaintiffs' home to carry out acts of illegal search and seizure without justification, provocation, or legal right to do so. These instances were knowingly illegal to the officers involved, and taken against the express wishes of the Plaintiffs as rightful owners, occupants, and or residents of the home at 357 Daniel Drive, North Tonawanda, New York, 14120.

13. On May 24, 2013, members of the North Tonawanda Police Department, specifically, James Muehlbauer, Robert Kalota, and Karen Smith, asserted to the Plaintiff, Mrs. Karcz, that they had a lawful right to enter the family's residence; after being denied admission and asked to leave the Plaintiffs' property, and told repeatedly by both Mr. and Mrs. Karcz, that they had no wish to speak with the police without an attorney present.

14. North Tonawanda Police Detective Robert Kalota picked up a brass hammer from a nearby toolbox and brandished it threatening to smash Mr. Karcz's window, and also asserting he had the lawful right to admit himself into the home via the sliding patio door. Kalota undertook this action unlawfully and intentionally to deprive the Plaintiffs of their rights.

15. Detectives Kalota and Muehlbauer who then forced open the door to the home where North Tonawanda Police Detectives Robert Kalota, James Muehlbauer, and Lieutenant Karen Smith forcibly admitted themselves and proceeded to convene an illegal search and seizure upon the home. At all times relevant to this complaint, Detectives Robert Kalota, James Muehlbauer, and Lieutenant Karen Smith were engaged in a joint venture, assisting each other in performing the actions described herein and lending their physical presence and support and the authority of their offices to one another.

16. There was no exigency to legitimately allow the unlawful search and seizure, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

17. No consent was given to legitimately allow the unlawful search and seizure, and the Plaintiffs had a right to be free from this violation of their rights.

18. During this first unlawful entry of the property, on May 24, 2013, North Tonawanda Police examined and took photos of the home, papers, and effects, and did damage to locked doors within the home. Damage amounted to $500.00.

19. Several hours later, upon information and belief, on May 24, 2013, Detective Muehlbauer, Detective Kalota, and Lieutenant Smith and Chief Willliam R. Hall returned with Lieutenant Robert Labushesky, Lieutenant Todd Bush; and Officers Stephen Endres, Terry Huey, Lee Bolsover, Robert Bohnstadt, Shawn Larson, and Daryl E. Truty and demanded entry for the purpose of searching and seizing the home at 357 Daniel Drive a second time in front of their children.

20. Once again, no search warrant was produced, and no exigent circumstances existed to justify the armed entry into the home of the Plaintiffs, and the Plaintiffs had a right to be free from this violation of their rights.

21. The Plaintiffs once again refused the heavily armed Police Officers admittance to the family home, but the police gained entry into the property by force, and again unlawfully searched and seized the home, papers, and effects of the Plaintiffs in front of their children, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

22. During this second search and seizure, on May 24, 2013, the North Tonawanda Police unlawfully searched and took photographs inside the home, upon information and belief, and seized articles of property from the home. Loss of property estimated at $1000.00. At all times relevant to this complaint, Detective Muehlbauer, Detective Kalota, and Lieutenant Smith and Chief Willliam R. Hall returned with Lieutenant Robert Labushesky, Lieutenant Todd Bush; and Officers Stephen Endres, Terry Huey, Lee Bolsover, Robert Bohnstadt, Shawn Larson, and Daryl E. Truty were engaged in a joint venture, assisting each other in performing the actions described herein and lending their physical presence and support and the authority of their offices to one another.

23. Some areas of the home, although searched, seized, and photographed, may have been left to contain potential "contraband" which would have clearly forever been "fruit of the poisonous tree" due to police misconduct.

24. Any alleged "contraband" seized at this time was in full control of police officers and officials during the search and seizure, and abandoned by its possessory officials for reasons unknown.

25. No charges were ever filed against the Plaintiffs, nor was any criminal wrong-doing alleged of the Plaintiffs in this incident. By the conduct, acts, and omissions complained of in paragraphs 13-24 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

VERIFIED COMPLAINT

26. Upon information and belief, on June 17, 2014, City of North Tonawanda Mayor Robert G. Ortt gave the participants of this illegal "raid" an award for their actions; officially condoning, and praising, and giving laudation to this pervasive abrogation of the Plaintiffs' rights. In addition to this egregiously permissive and unearned commendation, a number of the parties involved have received promotions during the past 38 months, often specifically after they have taken action against the Plaintiffs. The Plaintiffs had a right to be free from this violation of their rights.

27. On or around June 12, 2013, several police officers, upon information and belief, thought to include Todd Bush, Stephen Endres, Lee Bolsover, Robert Bohnstadt, and Daryl E. Truty came uninvited into the rear yard of the Karcz family home and falsely stated they'd received a call about a disturbance in the area and requested to gain admission to the house, and the Plaintiffs had a right to be free from this violation of their rights.

28. Upon information and belief, the Plaintiffs believe the officers were instructed, by police officials, to attempt to retrieve the potential "contraband" they'd left behind on May 24, 2013, without a warrant.

29. Mrs. Karcz stated to the officers that they'd come to the wrong address, and asked the police officers to leave immediately.

30. On or around July 15, 2013, Mr. Karcz saw officer Shawn Larson on his private property, within the curtilage of the home, without invitation or provocation, looking

into the windows of the house, and the Plaintiffs had a right to be free from this violation of their rights.

31. When asked what he was doing Officer Larson replied that he was "asked" to make a "wellness check" on the Karcz family's 4-year old daughter, but when directed to speak with Mr. Karcz's wife at the neighbor's home, he left immediately, and the Plaintiffs had a right to be free from this violation of their rights.

32. Between December 24, 2009 and June 2013, the North Tonawanda Police Department had never previously made any type of "wellness checks" for the Plaintiffs or their family; the only difference was the break-in by Muehlbauer, *et al.* Now the police evinced a clear intention to at any time, violate the Plaintiffs' "reasonable expectation of privacy." By the conduct, acts, and omissions complained of in paragraphs 27-31 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

33. On or around November 16, 2013, North Tonawanda Police Officers Jeff Shiesley and Terry Huey came onto the adjacent building lot titled as 351 Daniel Drive, North Tonawanda, property owned by Plaintiff Jennifer Karcz, and proceeded to place tickets on Mr. Karcz's boat, trailer, and vehicle which were parked legally, and the Plaintiffs had a right to be free from this violation of their rights.

34. Mr. Karcz contacted the police station traffic desk where he was informed the tickets

VERIFIED COMPLAINT

were written at the direction of North Tonawanda Police Chief William R. Hall. By the conduct, acts, and omissions complained of in paragraph 33, herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known, and the Plaintiffs had a right to be free from this violation of their rights.

35. Mr. Karcz then spoke with Mr. Robert Sondel, the Assistant City Attorney for North Tonawanda took the fallacious tickets and contacted the police department who then cancelled the citations.

36. Mr. Karcz was informed by Mr. Robert Sondel, the Assistant City Attorney for North Tonawanda that according to *North Tonawanda City Code Chapter 96 – Vehicle and Traffic, Article VII – Terrace Parking,* he and his wife were absolutely allowed to park vehicles, boats, and trailers on the paved half-circle/terrace area in front of the property she owned.

37. Robert Sondel, the Assistant City Attorney for North Tonawanda, advised Mr. Karcz to write official complaints of grievance to the Chief of Police regarding the trespassing; Chief William R. Hall. Chief Hall disregarded the official grievances and refused to speak with the Karcz family at this time, ignoring the official grievance process.

38. A North Tonawanda Police Lieutenant, upon information and belief, thought to be

Daniel Mahoney, came to the Karcz residence several days later and told Mr. Karcz that the vehicles were not legally parked, and that Assistant City Attorney Robert Sondel was "just wrong," and that the North Tonawanda Police would "just have to get the law changed." This was official harassment, and the Plaintiffs had a right to be free from this violation of their rights.

39. Prior to the Plaintiffs' buying the property at 351 Daniel Drive, Robert Brennan, a personal friend of North Tonawanda City Attorney Shawn P. Nickerson, parked his personal vehicles and/or trailers in the same location for many years with impunity from harassment, questioning, and certainly no tickets being produced, despite Brennan not owning the property. This was not equal protection under the law, and the Plaintiffs had a right to be free from this violation of their rights.

40. In June, July, and August of 2014, North Tonawanda Police Officer Jeff Shiesley, stopped several times in front of the Karcz home and engaged in threatening behavior while both in a police vehicle, and while driving his personal automobile. This was police harassment, and the Plaintiffs had a right to be free from this violation of their rights.

41. The behavior consisted of Officer Shiesley menacing and staring at both Mr. and Mrs. Karcz for several minutes before driving away. The behavior was so alarming, that Mr. Karcz bought and installed cctv cameras on the Plaintiffs' home in September 2014 in fear of Shiesley. Plaintiffs had a right to be free from this violation of their rights.

15

VERIFIED COMPLAINT

42. On or about September 27, 2014, Officer Shiesley pulled over in his private vehicle and, upon information and belief, appeared to be taking cell phone photographs of Mr. Karcz installing cctv security system on his home.

43. On May 18, 2015, Plaintiff, Jennifer Karcz, who was pregnant, was awakened by the noise of doors slamming downstairs; Mrs. Karcz was shocked to hear a man scream; "Freeze! Put your hands up! This is the police!"  Effecting an unlawful seizure of a person and a false arrest, and the Plaintiff had a right to be free from this violation of their rights.

44. The Plaintiff, Mrs. Karcz, who was sleeping nude, was embarrassed, mortified, alarmed, frightened, and extremely violated, due to this false arrest, and the Plaintiff had a right to be free from this violation of their rights.

45. The Fourth Amendment protects an individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." (Payton v. New York), this behavior on the part of the Defendants was clearly illegal, and the Plaintiffs had a right to be free from this violation of their rights.

46. The Plaintiff, Mrs. Karcz was then blinded by the light from a tactical high-lumen flashlight, but was able to ask "what are you doing in my home? Why are you searching my house?" To which the first policeman "North Tonawanda Police Officer John Doe I", identified as a tall, heavyset man, dressed in the white uniform worn by a

lieutenant or captain of the North Tonawanda Police Department, commanded her: "don't move!" Further unlawfully seizing the Plaintiff, and the Plaintiffs had a right to be free from this violation of their rights.

47. The Plaintiff Mrs. Karcz was scared and began to cry. When she stated her wish to dress, the North Tonawanda Police Officers refused to allow this and continued to detain the Plaintiff, Mrs. Karcz, at gunpoint without clothing in her own home, and the Plaintiff had a right to be free from this violation of their rights.

48. Upon information and belief, the North Tonawanda Police Officers' behaviors at this time can only be objectively viewed as evincing a depraved indifference to the human life of the Plaintiff, Mrs. Karcz, in that they recklessly engaged in conduct which created a grave risk of death to the Plaintiff, and the Plaintiff had a right to be free from this violation of their rights.

49. Upon information and belief, the North Tonawanda Police Officers' behaviors at this time constituted the felony crimes of Unlawful Imprisonment, 1st Degree, Burglary 1st Degree, Criminal Trespass 1st Degree, and Reckless Endangerment 1st Degree, as well as other lesser included offenses, and the Plaintiff had a right to be free from this violation of their rights.

50. Upon information and belief, the North Tonawanda Police Officers photographed Mrs. Karcz, without consent, on private property, in the nude, by using their North Tonawanda Police Department issued video cameras, and the Plaintiff had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

51. The Plaintiff, Mrs. Karcz, states: "North Tonawanda Police Officer John Doe II," identified as an imposing, wide-looking man, in the dark uniform of a North Tonawanda Police Department S.W.A.T. team member, or an officer lower than a lieutenant or captain, was pointing an automatic rifle at her during the unlawful detention, and the Plaintiff had a right to be free from this violation of their rights.

52. Upon information and belief, the Plaintiff, Mrs. Karcz asked the police officer described as "North Tonawanda Police Officer John Doe II;" "why are you pointing a machine gun at me in my own home?" To this query, the police officer described as "North Tonawanda Police Officer John Doe II," stated: "it's for our own protection, stay where you are." Unlawful detention, and the Plaintiff had a right to be free from this violation of their rights.

53. Upon information and belief, the Officer John Doe II also stated: "We are looking for your husband or boyfriend," the officer, John Doe II further stated: "We know he left in a Black Lexus."

54. The North Tonawanda Police, with intent to harass, annoy, or alarm the Plaintiff, Mrs. Karcz, intentionally engaged in a course of conduct directed at such person which the officer knew was likely to cause the Plaintiff to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnapping, unlawful imprisonment or death of herself or a member of such person's immediate family, such as her husband or children, a criminal offense, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

55. The Plaintiff, Mrs. Karcz noticed that the doors to her kitchen pantry, cellar, and garage were ajar, and asked the officers why they were searching her home. The North Tonawanda Police Officers then replied to the Plaintiff that they would do as they wished, and that she should tell them where her husband was. Given the fact the police officers carried automatic weapons and were dressed in bulletproof vests, Mrs. Karcz feared that their intent was to murder her husband, and the Plaintiffs had a right to be free from this violation of their rights.

56. The facts in this case are noteworthy for the absence of emergency.  No one was in distress.  The police officers were not there because they perceived any imminent danger of harm, and the Plaintiffs had a right to be free from this violation of their rights.

57. A reasonable police officer would understand that they could not enter the home without consent or a search warrant, and the Plaintiffs had a right to be free from this violation of their rights.

58. Due to the actions of the North Tonawanda Police, the sliding patio door had been damaged, pried loose from its tracks, and that the latch was now loosely attached. The gates on the fence which had been locked prior to the unlawful entry by the police, were damaged and partly open, and the Plaintiffs had a right to be free from this violation of their rights. The cost of the door and gate damage was approximately $2,000.00.

59. The North Tonawanda Police Officers who broke into the Plaintiffs' home gave no

VERIFIED COMPLAINT

explanation or apologies whatsoever to Mrs. Karcz as to their motivations and intentions for breaking into the Plaintiffs residence at this time or any other, and no official policy or explanation or apology was ever offered for this violation of the Plaintiffs' constitutional rights to be free from illegal search and seizure. As a result of the events alleged herein, and due directly to the actions taken by the individual defendants, Mrs. Karcz suffered and continues to suffer emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, among other things.

60. The North Tonawanda Police Officers involved in this incident, at all times, refused to identify themselves, and the Plaintiffs had a right to be free from this violation of their rights.  By the conduct, acts, and omissions complained of in paragraphs 43-59 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

61. There is no enforcement of officer identity by the City of North Tonawanda, as part of a pervasive custom or official policy and/or practice of the City of North Tonawanda's Police Department, and the Plaintiffs had a right to be free from this violation of their rights.

62. At no time during the course of the incident did Mrs. Karcz pose a threat to the safety of Defendants or the public. Ms. Karcz was not engaging in any criminal activity, she was not arrested, nor was she charged with a crime in connection with the events of May 18, 2015. The conduct of the defendant officers, in detaining Mrs. Karcz and

using force against her, was totally without probable cause, was excessive, and was done maliciously, falsely and in bad faith.

63. There was no exigency to legitimately allow the unlawful search and seizure: the lights to the home were out, Mrs. Karcz was asleep with the telephone ringer off, no noise, lights, smells, screams, or requests from within the home. After the first locked barrier was broken into, the police had full access to looking through windows; nothing was amiss. A reasonable police officer doesn't break and enter the home, they return to the patrol or station, and the Plaintiffs had a right to be free from this violation of their rights.

64. No consent was given to legitimately allow the unlawful search and seizure, and the Plaintiffs had a right to be free from this violation of their rights.

65. Any items in the home at this time, searched, seized, or photographed by police, possibly thought to be "contraband", were exactly the same as those "contraband" items extant in the property searched, seized, and/or left by police on May 24, 2013, and thereby "fruit of the poisonous tree."

66. Official confirmation of such items continued existence in the premises would forever be tainted as "fruit of the poisonous tree," and the *Exclusionary Rule* due to the illegal nature of the search and seizure and unattenuated linkage therefrom.

67. The search and seizure at this time was intrinsically unlawful and in violation of the Plaintiffs' Constitutionally protected federal rights, and the Plaintiffs had a right to be

free from this violation of their rights.

68. Any portion of this search and seizure relied upon for a basis in the future for purposes of a search warrant or other action against the Plaintiffs is likewise barred as "fruit of the poisonous tree," due not only to its unreasonableness and lack of attenuation to the initial taint, but also to derivative relationship of the search on May 24, 2013.

69. There is no permissibility to search for items already excluded under law, and although once unlawfully seized and controlled by law enforcement, abandoned due to their own negligence.

70. The Plaintiff, Mr. Karcz, filed a letter of grievance with North Tonawanda Chief of Police, William R. Hall, on May 21, 2015 demanding explanation, identification, and discipline of the individual North Tonawanda Police Officers involved in the aforesaid incident. The letter was ignored by North Tonawanda City officials, and the Plaintiffs had a right to be free from this violation of their rights. By the conduct, acts, and omissions complained of in paragraphs 63-70 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

71. On or about May 23rd, 2015, Jennifer Karcz was painting in her home during the day. At approximately 1:00 p.m., there was a knock on the front door by two uniformed North Tonawanda Police Officers.

72. When Mrs. Karcz looked out she saw two uniformed North Tonawanda Police Officers, identified as "NORTH TONAWANDA POLICE OFFICERS JOHN DOE III

VERIFIED COMPLAINT

AND IV" looking through the windows in front of her house and garage, and the Plaintiffs had a right to be free from this violation of their rights. Mrs. Karcz spoke through a locked screen door to the officers 10 to 20 feet away, and asked them what was their purpose for being on her property and within her curtilage.

73. Upon information and belief, one of the officers stated: "we've received a call. "They" thought it was too quiet." The Plaintiff, Mrs. Karcz replied: "what's wrong with quiet? That's the way it normally is in this neighborhood, so I would think it's a good thing." The police officer replied "yes, ma'am it is. You'd better keep it that way."

74. The policemen were within the curtilage of the home without permission or justification, and the Plaintiffs had a right to be free from this violation of their rights.

75. The police actions at this time constituted a search of the Plaintiffs' property, and the Plaintiffs had a right to be free from this violation of their rights.

76. No charges were ever filed against the Plaintiffs, nor was any wrong-doing alleged in this incident.

77. There was no exigency to legitimately allow the unlawful search and seizure, and the Plaintiffs had a right to be free from this violation of their rights.

78. No consent was given to legitimately allow the unlawful search and seizure, and the Plaintiffs had a right to be free from this violation of their rights.

79. As no exigent circumstance compelled the police to visit, and there was no credible

23

VERIFIED COMPLAINT

belief that any occupant of the house was in need of aid or assistance, neither the exigency exception or "community caretaking" exception is available to these officers for their visit, which was clearly directed at continuation of an ongoing pattern of violation of the Plaintiffs' constitutionally protected rights. By the conduct, acts, and omissions complained of in paragraphs 72-78 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

80. On June 8, 2015, Plaintiff John Karcz, was home when the front door to his home had been smashed in by law enforcement officers without knocking and announcing their presence, in violation of the law and conscious disregard for the provisions of the search warrant they possessed, and the Plaintiffs had a right to be free from this violation of their rights.

81. The Plaintiffs' home was unnecessarily damaged, and the Plaintiffs had a right to be free from this violation of their rights.

82. There was no consideration of the Plaintiffs' personal dignity, and the Plaintiffs had a right to be free from this violation of their rights.

83. No effort was made to offer the Plaintiff an opportunity for voluntary compliance.

84. Upon beginning to descend the stairs, he was confronted by North Tonawanda Police Officer Richard Wydysh pointing a high caliber handgun at him, and the Plaintiff had a right to be free from this violation of their rights.

85. Officer Wydysh ordered Mr. Karcz to raise his hands, so as to appear in front of him fully nude as Wydysh filmed him with a City of North Tonawanda issued personal body camera, videos which Wydysh admitted to possessing and continuing to view over 12 months later, and the Plaintiff had a right to be free from this violation of their rights.

86. A number of officers of the North Tonawanda Police Department and the Niagara County Sheriff's Department (DTF) Drug Task Force dressed in military-style uniforms, bulletproof vests, and a variety of extensive assault weaponry then entered the Karcz home and began to conduct themselves in acts of vandalism, theft, and a litany of civil rights violations while conducting an intentionally illegal search at the direction of North Tonawanda Police Department Detective James Muehlbauer, Niagara County Sheriff's Deputy Ronald P. Dworzanski, Niagara County Sheriff's Captain Scott Lombardo, North Tonawanda Captain of Detectives Thomas E. Krantz, and North Tonawanda Chief of Police William Hall, and the Plaintiffs had a right to be free from this violation of their rights.

87. None of these actors had reason to believe the search was lawful as they'd all shared in the knowledge of the previous "fruit of the poisonous tree" from May 24, 2013, and the Plaintiffs had a right to be free from this violation of their rights. In full acknowledgement of this, Chief Hall specifically endeavored to not enter the home or curtilage at this time to attempt to "purge the taint" of illegality.

88. The other parties involved in the actions were "NIAGARA COUNTY DTF and/or SHERIFF'S DEPUTIES JOHN DOE I, II, III, AND IV" of the Niagara County

Sheriff's Department.

89. Upon information and belief, Detective Muehlbauer stated: "I'm here for the Medical Marijuana I left in your basement two years ago." Muehlbauer also stated to Detective Kuebler, he was "mad at" the Plaintiff, Mr. Karcz, according to Kuebler.

90. Upon information and belief, Muehlbauer was referring to the unlawful search and seizure of May 24, 2013.

91. The Plaintiff, Mr. Karcz asserted that this was an illegal search and that he wanted to contact his attorney.

92. Upon information and belief, Detective Muehlbauer then stated: "I don't care; the District Attorney, Bittner, got me a search warrant, and the judge signed it," and the Plaintiffs had a right to be free from this violation of their rights.

93. The warrant had no affidavit attached, and warrant likewise failed to identify a probable cause for its production. Nor did it specify the specific area or areas to be searched within the large home, despite the requirement that the warrant adhere to scrupulous specificity. These factors rendering the warrant insufficient to command a search.

94. No *Miranda* warning was given to the Plaintiff, Mr. Karcz; ergo, no oral statements were applicable suggestively incriminate the defendant or falsely charge him with anything. The law enforcement officers however, were free to leave at any time, their statements were not compelled by custody, and should be more interpretive of the situation.

VERIFIED COMPLAINT

95. The Plaintiff, upon information and belief, asked Deputy Dworzanski; "did you lie to the Judge (Lewis)? You must have committed perjury to get into my house." Deputy Dworzanski replied: "So what?"  "He (Judge Lewis) signed it without even looking at it, as soon as he heard your name. Fight it if you want, but you'll spend half your life in court. Ha, ha!"

96. Deputy Dworzanski, Detective Muehlbauer, et al, proceeded to search, seize, and take photographs of private paperwork, jewelry belonging to Plaintiff Jennifer Karcz, family memorabilia, artwork, furniture, and clothing in the house all contrary to the provisions of the search warrant, and the Plaintiffs had a right to be free from this violation of their rights.

97. Two sporting guns belonging to the Plaintiff, Mrs. Karcz, were seized contrary to the provisions of the *Terry* Doctrine and the requirement for scrupulous specificity in search warrants.

98. The sporting guns were not in plain view, were safely locked in a gun safe in the Plaintiff, Mrs. Karcz, bedroom. A reasonable police officer would not have found it necessary to open the safe.

99. The police involved in the search knew of the existence of the sporting guns and also their location.

100. The location of the sporting guns' locker was known only from the previous illegal searches and seizures committed against the Plaintiffs.

101. The sporting guns were unlawfully seized, and the Plaintiffs had a right to be free

VERIFIED COMPLAINT

from this violation of their rights. Their value was $1,500.00.

102. Despite total absence from the search warrant, and being at an unrelated address, a boat belonging to the Plaintiffs at 351 Daniel Drive, was also seized, searched, and intentionally damaged by police; with keys and personal property having been stolen therefrom, and the Plaintiffs had a right to be free from this violation of their rights. The loss totaling over $2000.00.

103. Deputy Dworzanski, one of the leaders of the search, also intentionally proceeded to damage an expensive WIFI thermostat without permission, and the Plaintiffs had a right to be free from this violation of their rights.

104. In the course of the unlawful search, interior walls and doors were damaged, children's bedrooms were vandalized with curtains ripped down and destroyed, and windows were broken by Dworzanski and other law enforcement officers, and the Plaintiffs had a right to be free from this violation of their rights. The loss from damage to the home amounted to in excess of $10,000.00.

105. Personal papers belonging to the Plaintiff, Mr. Karcz's pension documents and real estate documents for both Plaintiffs' rental business were illegally searched and seized from a garage safe, and the Plaintiffs had a right to be free from this violation of their rights.

106. One of Mr. Karcz's bracelets, a gift from his wife was taken from the garage safe

while it was under the control of Deputy Dworzanski, and the Plaintiffs had a right to be free from this violation of their rights. The property was valued at over $1,000.00.

107. The Plaintiff, Mrs. Karcz's jewelry was removed from both an upstairs jewelry armoire and also a garage safe, to which only Dworzanski had been supplied the combination, and placed on the kitchen counter, and the Plaintiffs had a right to be free from this violation of their rights.

108.  Mr. Karcz saw one of the officers, identified as "Niagara County Drug Task Force Officer JOHN DOE I," a clean-shaven man, approximately 6 feet tall, brown hair, medium build, maroon shirt, take one of Mrs. Karcz's diamond and gold bracelets and place it in his pocket, and the Plaintiffs had a right to be free from this violation of their rights. The bracelet, purchased in St. Thomas, USVI, had cost the Plaintiff $4,200.00

109.  A NCDTF officer also purposely urinated on the walls and floor of the Plaintiffs' powder room, and the Plaintiffs had a right to be free from this violation of their rights.

110.  Despite being given combinations and having access to the Plaintiffs' three safes, intentionally destroyed an expensive gun safe with sledge hammers in the driveway of the home, and the Plaintiffs had a right to be free from this violation of their rights.

111. Upon information and belief, Lieutenant Mahoney arrived and said to the Drug Task Force: "you guys better hurry up with this crap, (Plaintiff John) Karcz has an attorney on the way," in full conspiracy and knowledge of the unlawful activity currently

VERIFIED COMPLAINT

underway.

112. "North Tonawanda Police Officer John Doe V," a medium-tall height, stocky man wearing a dark N.T.P.D. uniform, baseball cap, seen standing in the driveway on the video, called to "Niagara County Drug Task Force Officer JOHN DOE I," in the driveway and directed him to destroy the cctv security cameras which were visible in the front of the house, and the Plaintiffs had a right to be free from this violation of their rights.

113. "Niagara County Drug Task Force Officer JOHN DOE I" left the driveway, and proceeded to the Karcz family's elder daughter's bedroom, ripped down the curtains, pulled the screen from the window while intentionally damaging it, and climbed out on one of the house's low pitched roofs where he proceeded to damage each cctv camera with his hands and a knife, and the Plaintiffs had a right to be free from this violation of their rights. Damage was estimated at $2,500.00. By the conduct, acts, and omissions complained of in paragraphs 80-113 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

114. The search warrant issued by City of North Tonawanda Judge William R. Lewis was predicated on perjury by police officers, suborned and attested to in bad faith by the Niagara County District Attorney's office, and a personal failure of the Judge to carry out his required duties of vetting probable cause, and the Plaintiffs had a right to be free from this violation of their rights.

115. The search warrant did not abide the requirements for scrupulous exactitude,

particularity, or probable cause for the actual issuance of the search warrant, rendering it illegal under federal law, and the Plaintiffs had a right to be free from this violation of their rights.

116. City of North Tonawanda Judge William R. Lewis knowingly considered prejudicial and illegally obtained knowledge presented to him by the North Tonawanda Police Department under the guidance of the Niagara County District Attorney's Office, derivative of prior unlawful police actions. The Plaintiffs had a right to be free from this violation of their rights.

117. The information presented to City of North Tonawanda Judge William R. Lewis did not meet the requirement for probable cause under the law as required to predicate a search warrant, and upon information and belief, considered non-professionally predicated opinions and hearsay. Upon information and belief, Judge Lewis also garnered prejudicial hearsay from an ongoing close, personal relationship with the Plaintiffs' next-door neighbor Priscilla "Pat" Wattengel. The consideration of these factors were beyond the scope of the Lewis's authority. The Plaintiffs had a right to be free from this violation of their rights.

118. In requesting the search warrant against the Plaintiffs, the prosecutors, witnesses, and/or affiants, upon information and belief, intentionally and knowledgeably perjured themselves with blatant and intentional disregard to the civil rights of Mr. and Mrs. Karcz. By assisting the police in preparing the search warrant affidavit and application, the prosecutor took on police work. The Plaintiffs had a right to be free from this violation of their rights.

119. All of the testimony received by Judge Lewis in support of the search warrant was from police sources knowingly and illegally collected in violation of the 4th, 5th, 9th, and 14th Amendments of the United States Constitution, and the North Tonawanda Court had no jurisdiction over the Plaintiffs due to the circumstance of an underlying search warrant totally lacking in indicia for probable cause.

120. City of North Tonawanda Judge William R. Lewis had a record of violating the Plaintiff's constitutional rights under the 5th, 6th, and 14th Amendments by an unlawful ruling in 2008. Judge Lewis is not necessarily incompetent; and has held his office for many years, however, his dealings with the Plaintiff, Mr. Karcz, consistently lead to violations of the Plaintiffs' legal rights. Therefore, it is more likely than not Lewis acted in bad faith and out of improper motivations.

121. As a result of their past history, whereby City of North Tonawanda Judge William R. Lewis was caught violating the Plaintiff, Mr. Karcz's constitutional rights, Lewis had the improper motivation to, and is likely to have acted on a personal bias towards the Plaintiff by his action of authorizing what he knew was a clearly illegal search warrant. The Plaintiffs had a right to be free from this violation of their rights.

122. Judge Lewis knew that the evidence must also pass a test of reliability that our justice system calls probable cause.  The Fourth Amendment itself spells out the evidence required for a warrant or entry order.  This test of reliability was not achieved, as the bases supplied were separately and severally objectively unreasonable for such finding. By not protecting the Plaintiffs' rights with equity, Lewis's conduct exceeded the scope of his discretionary authority in a manner no reasonable official would have

32

VERIFIED COMPLAINT

under the circumstances.

123. No probable cause standard was met here because Judge Lewis didn't do his job impartially and request such proof, nor had he any intention of protecting the Plaintiffs' constitutional rights as his job requires, due to his personal enmity towards the Plaintiff Mr. Karcz, and the Plaintiffs had a right to be free from this violation of their rights.

124. Despite being named as the subject and/or suspect of the search warrant the Plaintiff, Mr. Karcz, had no contact with members of North Tonawanda Police Department or the Niagara County Sheriff's Department at the address involved any time during the many months preceding production of the search warrant.

125. The Plaintiff, Mr. Karcz, had no contact whatsoever with any of the warrant's affiants or any witnesses named therein since May 23, 2013, rendering their testimony towards his knowledge or involvement in any activities at 357 Daniel Drive, unacceptable for a probable cause finding and obvious perjury, and the Plaintiff had a right to be free from this violation of their rights.

126. The Plaintiff, Mrs. Karcz, was not present during the search warrant enactment, and presented no valid reason to be charged with any crime.

127. The Plaintiff, Mrs. Karcz had no provable relation to the possession of any "contraband" in the home and was unlawfully charged days later by the prosecution to exert undue pressure on the Plaintiffs, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

128. The Plaintiff, Mr. Karcz had no provable relation to the possession of any "contraband" in the home, despite the false assertions of the police as "complaining witnesses."

129. Upon information and belief, there was no probable cause to arrest or charge Mrs. Karcz as there was no probable cause to name her on the search warrant, and no additional evidence was thereby uncovered which brought a change to that circumstance. Mrs. Karcz was charged only as a capricious manipulation of the laws to deny Mr. Karcz the support of an uncharged family member. The Plaintiffs had a right to be free from this violation of their rights.

130. Despite differential arrests, and for separate reasons which both lacked probable cause, the prosecution refused to bifurcate the cases against the Plaintiffs despite repeated requests by counsel, and the Plaintiffs had a right to be free from this violation of their rights.

131. Upon information and belief, the reason for the forced joinder of the Plaintiffs as Defendants was intended to deny either partner in marriage the opportunity to challenge the District Attorney for wrongful arrest and malicious prosecution, and the Plaintiffs had a right to be free from this violation of their rights.

132. Upon information and belief, the District Attorney used the Plaintiffs' love for each other to cause harm each unto the other in violation of the 9th Amendment of the United States Constitution, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

133. The Plaintiff, Mr. Karcz was one of several owners of the property at 357 Daniel Drive, North Tonawanda, New York, but the only owner named in the search warrant. No effort was made to determine the parties who actually resided in the residence, inclusive of adult friends and family members living with the plaintiffs.

134. The Plaintiff, Mr. Karcz, owned several other properties in Niagara Falls at the time of the investigation leading to the search warrant, and was generally domiciled there, rendering the reasoning applied to naming him the subject of the search warrant fallacious, and once again eviscerating any probable cause, and the Plaintiffs had a right to be free from this violation of their rights.

135. Upon information and belief, in approving the search warrant in violation of the Plaintiffs' constitutional right to be free from unlawful search and seizure, and not discharging his duty as a jurist lawfully, City of North Tonawanda Judge William R. Lewis intentionally took personal action "in the face of clearly valid statutes," with blatant and intentional disregard to the civil rights of Mr. and Mrs. Karcz, and the Plaintiffs had a right to be free from this violation of their rights.

136. Upon information and belief, the North Tonawanda Police Department, The Niagara County Sheriff's Department, in conspiracy with and under direction from The Niagara County District Attorney's Office intentionally and/or recklessly withheld potentially exculpatory information from the court, and the Plaintiffs had a right to be free from this violation of their rights.

137. Upon information and belief, in requesting the search warrant in violation of the Plaintiffs' constitutional right to be free from unlawful search and seizure, and not

honestly discharging their duties as police officers lawfully, James Muehlbauer and Ronald P. Dworzanski intentionally took personal action with blatant and intentional disregard for the law and civil rights of Mr. and Mrs. Karcz, and the Plaintiffs had a right to be free from this violation of their rights.

138. In the ensuing procedures of the case brought against the clients, the two assigned Assistant District Attorneys, Laura T. Bittner and Kevin D. Canali, despite knowing the inconsistencies of the case in chief, vehemently refused to allow the Plaintiffs' defense counsel access to potentially exculpatory information in the perjured search warrant affidavits, and the Plaintiffs had a right to be free from this violation of their rights.

139. Upon information and belief, the Niagara County District Attorney's Office conspired, in violation of law, to deprive the Plaintiffs of access to substantial justice, by advising the NTPD and NCSD and/or the NCDTF in investigative and search warrant affidavit production, and the Plaintiffs had a right to be free from this violation of their rights.

140. Upon information and belief, A.D.A. Canali allegedly stated to a credible witness (Detective Kuebler), who, of their own volition, repeated the information to Mr. Karcz, that his (A.D.A. Canali's) case was very weak due to being based primarily on a questionable "wellness check" and a fatuous "protective sweep" made while Mrs. Karcz was erroneously being held at gunpoint by police, and that additionally he doubted the veracity of the state's "complaining witnesses" (law enforcement officers) but claimed he was unauthorized to drop the charges. Based on the context of the

VERIFIED COMPLAINT

conversation, wherein Kuebler was claiming to have "helped" the Plaintiff, Mr. Karcz, of his own volition, by his intrusive invasion of the Plaintiff's privacy, and had no motivation to lie, his veracity seems likely.

141. A.D.A. Canali did, however, propose and request that the Court accept, a plea bargain unrelated to the search warrant, in a further attempt to hide the illegalities hidden therein, and the Plaintiffs had a right to be free from this violation of their rights.

142. Upon information and belief, A.D.A. Canali therefore insisted in dropping all charges brought about by the reasonably excludible evidence of the search, in tacit acknowledgement of it being "fruit of the poisonous tree," and attempting to deprive the plaintiffs of this claim on appeal.

143. Upon information and belief, A.D.A. Bittner absolutely refused to provide the search warrant affidavit to any of the Plaintiffs' three attorneys, and threatened to take retributive and retaliatory actions against the Plaintiffs if the plea bargains were not accepted by both without access to the exculpatory evidence derivable from the affidavit.

144. Upon information and belief, the plea bargains demanded by both A.D.A. Bittner and A.D.A. Canali, however, in an attempt to insulate themselves from the pall of wrongdoing, and their office from wrongdoing, were not for lesser included crimes or even related to those charged under the dubious search warrant, and the Plaintiffs had

VERIFIED COMPLAINT

a right to be free from this violation of their rights.

145. By denying the Plaintiffs' access to potentially exculpatory information related to and found within the search warrant affidavit, the District Attorney's Office and its individual agents denied the Plaintiffs access to substantial justice, and the Plaintiffs had a right to be free from this violation of their rights.

146. Upon information and belief, no *Brady* Material was produced by the prosecutor, despite its unequivocal existence, and the Plaintiffs had a right to be free from this violation of their rights.

147. Upon information and belief, by refusing to prosecute the law enforcement officers who committed felonious criminal acts in the Plaintiff's home, the Niagara County District Attorney, Michael Violante, and his subordinates suborned a pervasive disregard for the law, and thereby assume personal liability for acting under Color of Law to violate the Plaintiffs' federally protected rights, and the Plaintiffs had a right to be free from this violation of their rights.

148. District Attorney Michael Violante also failed to abide by his oath of office and ABA Rules: Prosecutors who supervise subordinates may not encourage or ratify misconduct by subordinates and must make reasonable efforts to ensure that subordinates abide by ethical rules. Violante is ultimately responsible for the acts of his assistants. (See, e.g., ABA Model Rules 5.1, 5.3 and 8.4(a), NY Cty L § 825 (2015). This action was in violation of Due Process and Equal Protection, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

149. In late June 2015, the Plaintiff, Mr. Karcz was approached by North Tonawanda Police Detective Lawrence Kuebler who, upon information and belief, had secretly purchased the distressed home next door to the Plaintiffs during the events leading up to the production of the unlawful search warrant. Kuebler confronted the Plaintiff, identified himself as a police officer "who was ready to retire." Kuebler then said he'd been "told" the Plaintiffs "hated all cops" by Shiesley, and "were trying to get (Officer) Shiesley in trouble." Kuebler, who falsely claimed to be uninvolved with the prior unlawful investigations of the Plaintiff, Mr. Karcz, without provocation or consent inserted himself in the Plaintiffs' legal affairs and began discussing the Plaintiffs' private business with Defendants Hall, Muehlbauer, Canali, Shiesley, and others. This constituted, violation of the Plaintiffs' rights to privacy and police harassment under Color of Law, and the Plaintiffs had a right to be free from this violation of their rights.

150. Beginning on or about June 8, 2015, and continuing through on or about June 14, 2015, North Tonawanda Captain of Detectives Thomas E. Krantz, North Tonawanda Chief of Police William R. Hall, and Niagara County Sheriff James R. Voutour, acting as publishers and/or repeaters, contacted or directed to be contacted at least 12 venues of publicity including the newspaper press, television news, and even online social media networks to give "press releases" with the purpose to deliberately defame the Plaintiff, Mr. Karcz in the community where he, his wife, and his children are domiciled. Upon information and belief, the "press releases" were without purpose other than disclosing private information in a highly objectionable manner and negatively influencing the opinion of others against. The tortious acts thereof

VERIFIED COMPLAINT

consisted of intrusive invasion of privacy, presenting Mr. Karcz in a false light, and public revelation of private and unproven facts, and was done so for improper purpose and with malice. The Plaintiff, Mr. Karcz, and the Plaintiff had a right to be free from this violation of their rights.

151. The defamatory information published over and over again due to Krantz's incessant contact of the press, on behalf of Hall and Voutour, consisted of photos purported to be inside the Karcz home, the specific address of the Karcz residence, and a variety of unfounded, never proven, and prejudicial allegations presented as fact under authority of the North Tonawanda Police Department and Niagara County Sheriff's Office. The specific tort herein was the excessive publication, with malice and improper purpose, which cast the Plaintiffs in a false light. The Plaintiffs had a right to be free from this violation of their rights.

152. Upon information and belief, the Plaintiff's employer was contacted based on the pension information taken unlawfully from his home by law enforcement officials, and where Mr. Karcz was well employed making over $80,000.00 per year, and the Plaintiff had a right to be free from this violation of their rights.

153. Upon information and belief, after the Plaintiff's employer was contacted by law enforcement to publicize the event of Mr. Karcz's arrest without purpose other than disclosing private information in a highly objectionable manner and negatively influencing the opinion of others against the Plaintiff, Mr. Karcz. Mr. Karcz was fired from his job immediately, and the Plaintiff had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

154. Upon information and belief, the "press releases" produced by North Tonawanda Captain of Detectives Thomas E. Krantz, North Tonawanda Chief of Police William R. Hall, and Niagara County Sheriff James R. Voutour also served to publicize the address where the Plaintiff, Mr. Karcz lived with his young children, thereby purposely and intentionally denying the Plaintiffs and their family the right to seclusion and jeopardizing the children's safety, and the Plaintiffs had a right to be free from this violation of their rights.

155. Upon information and belief, because the "press releases" produced by North Tonawanda Captain of Detectives Thomas E. Krantz, North Tonawanda Chief of Police William R. Hall, and Niagara County Sheriff James R. Voutour disclosed private information about the Plaintiffs' address in a highly objectionable manner, with no legitimate public concern and negatively influencing the opinion of others against the Plaintiff, Mr. Karcz, the Plaintiff's family was denied their right to substantial dignity and suffered the indignity of being a point of ridicule for the ignorant of the community and curiosity seekers some of whom yelled obscenities at the Plaintiffs and their children, and the Plaintiff had a right to be free from this violation of their rights.

156. Due to the wanton and unlawful use of this publicity against the Plaintiff, Mr. Karcz, upon information and belief has been unable to secure employment despite securing nearly 100 interviews and over 700 applications nationwide, and the Plaintiff had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

157. Due to the Plaintiffs' public defamation by law enforcement officials, and harassment by certain police officers, the Plaintiffs' minor children were forced to leave their assigned school in the City of North Tonawanda and the Plaintiffs were forced to pay tuition for their education in the neighboring Town of Amherst, and the Plaintiffs had a right to be free from this violation of their rights.

158. The Plaintiff, Mrs. Karcz, contacted the New York State Office of Workers' Compensation on or about May 20, 2015, and, exercising her rights to free expression and association, and constitutionally protected speech, reported an individual that lived in her neighborhood for fraudulently collecting benefits. The Workers' Compensation Board independently verified Mrs. Karcz complaint and instituted an investigation. The individual accused of fraud was North Tonawanda Police Officer Jeff Shiesley.

159. Beginning on June 10, 2015, and continuing through June 22, 2015, in direct reprisal for the Plaintiff, Mrs. Karcz's constitutionally protected report to N.Y.S. Worker's Compensation, North Tonawanda Police Officers Richard Wydysh and Jeff Shiesley harassed the Plaintiffs at the Drake Elementary School where the Plaintiffs' children attended, and the Plaintiffs had a right to be free from this violation of their rights.

160. On several occasions between June 9, 2015 and June 22, 2015, North Tonawanda Police Officers Richard Wydysh and Jeff Shiesley together and separately harassed the Plaintiffs at the Drake Elementary School by stating aloud in the Plaintiffs' and other citizen's presences that they had nude photographs of Mr. and Mrs. Karcz taken by North Tonawanda city-owned police cameras which were illegally brought by

Wydysh and other North Tonawanda Police Officers into the Plaintiffs' home on or about May 18, 2015 and June 8, 2015, and the Plaintiffs had a right to be free from this violation of their rights. Officers Richard Wydysh and Jeff Shiesley together and separately harassed the Plaintiffs by falsely telling other parents and teachers at the Drake Elementary School that the Plaintiffs were "arrested for drug dealing" – outright lies. The defamatory statements were presented as "official police information," and the Plaintiffs had a right to be free from this violation of their rights.

161. The above described conduct and actions of the individual Defendants, acting under color of law, deprived Plaintiff of her rights to free expression and association, was done due to Defendants' personal animus and bias against the content of Plaintiff's speech, and in retaliation against Plaintiff's exercise of her constitutionally protected free speech; was done to interfere with, and chill, the exercise of free speech and association, and was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. 1983, and the First and Fourteenth Amendments to the United States Constitution.

162. North Tonawanda Police Officer Jeff Shiesley also told several of the Plaintiffs' neighbors Mr. Karcz was a "pot head." Since Shiesley disclosed private information about the Plaintiff in a highly objectionable manner, with no legitimate public concern and negatively influencing the opinion of others against the Plaintiff, Mr. Karcz, the

43

VERIFIED COMPLAINT

Plaintiff's family was denied their right to substantial dignity and suffered the indignity of being a point of ridicule for the ignorant of the community and curiosity seekers some of whom have yelled obscenities at the Plaintiffs and their children based on Shiesley's behavior. The defamatory statements were presented as "official police information," and the Plaintiffs had a right to be free from this violation of their rights.

163. In direct relation, reprisal, conspiracy and retaliation against the decision which curtailed the illegal harassment of the police department relative the Plaintiffs' parking of their vehicle, boat, and trailer on the paved area they own in front of 351 Daniel Drive (in 2013), City Attorney Shawn P. Nickerson requested an unlawful amendment to *the North Tonawanda City Code Section 96 – Vehicle and Traffic, Article VII – Terrace Parking* on July 7, 2015, and the Plaintiffs had a right to be free from this violation of their rights.

164. In his request, upon information and belief, Nickerson specifically singled out trailers and boats that were parked on a paved half/circle/terrace such as the one Plaintiff Jennifer Karcz owns next door to her home at 351 Daniel Drive.

165. The wording of the amendment proposed by Nickerson, upon information and belief, was so unique and specific that it applied only to one single property in the City of North Tonawanda – the property at 351 Daniel Drive owned by Jennifer Karcz.

166. According to the resolution, upon information and belief, Nickerson requested to be passed by the North Tonawanda Common Council, the amendment would become

effective the day after publication in the official paper of North Tonawanda; as of July 2016, no such publication has ever taken place, yet Nickerson personally mailed the Plaintiffs a letter claiming they were in violation.

167. Making the enforcement of the parking ban against the Plaintiffs effectively an illegal ordinance applied to one individual party without due process of law, and the Plaintiffs had a right to be free from this violation of their rights.

168. On or about July 18, 2015, upon information and belief, North Tonawanda Police Officer Jeff Shiesley falsely reported that the Plaintiffs were photographing his son at a local park, and attempted to press charges so that Mr. Karcz be illegally arrested, and the Plaintiffs had a right to be free from this violation of their rights.

169. The Karcz family was attending an event where their eldest daughter was invited to compete in a sports competition, and were filming their own child.

170. Upon information and belief, the Assistant District Attorney for North Tonawanda, Canali, then called the Plaintiffs' attorney, who notified them of Shiesley's fallacious claims. It was also conveyed by the Plaintiff's former attorney, Damon DeCastro, that Shiesley wished to do physical harm to Mr. Karcz. This caused the Plaintiffs to be alarmed, seriously annoyed, and placed in fear of false arrest, and the Plaintiffs had a right to be free from this violation of their rights.

171. The Prosecutor's office did not properly investigate Shiesley's veracity or motivation before levelling their verbal accusation against the Plaintiff, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

172. In mid-November of 2015, the Plaintiffs' boat and trailer were once again ticketed, on private property, for being "non-registered vehicles on a public roadway," which was renewed official harassment, and the Plaintiffs had a right to be free from this violation of their rights.

173. The City Attorney's Secretary Linda Krempa informed Mr. Karcz that he was now being ticketed at direct request of the North Tonawanda Chief of Police William R. Hall, and the Plaintiffs had a right to be free from this violation of their rights.

174. Mrs. Krempa provided him  abstracts that Hall had personally printed to show ownership of his boat and trailer and brought to the City Attorney's Office prior to ordering his officers to write the retaliatory citations.

175. Several days later, Mr. Karcz received a letter from City Attorney Nickerson accusing him of parking on the terrace of his wife's property, and threatening to tow his vehicle and conveyances from the property, and the Plaintiffs had a right to be free from this violation of their rights.

176. The Plaintiffs' were directed by the Linda Krempa in the North Tonawanda City Attorney's Office to pay a $20.00 fee for an application which would allow them to continue parking on their own property. Despite paying the fee, the application was ignored, and no answer was sent to the Plaintiffs, and the Plaintiffs had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

177. All of the above actions regarding the Plaintiffs' spare lot at 351 Daniel Drive, taken together, constitute harassment to the Plaintiffs and is a singular retaliation where a municipal ordinance was attempted to be changed without due process, and unfairly enforced by the North Tonawanda City Attorney, Shawn P. Nickerson, and the Plaintiffs had a right to be free from this violation of their rights.

178. Upon information and belief, Nickerson's actions are based in part on a desire to retaliate for his close friend Robert Brennan, who formerly parked on the vacant lot and was outbid by Mrs. Karcz for ownership, and the Plaintiffs had a right to be free from this violation of their rights.

179. As a result, Nickerson, upon information and belief, has also acted in conspiracy with the North Tonawanda Chief of Police, William R. Hall, under Color of State Law, to harass and arbitrarily and capriciously deprive the Plaintiffs of their federal constitutionally protected rights to property, and the Plaintiffs had a right to be free from this violation of their rights.

180. On June 30, 2015, Plaintiff Jennifer Karcz, was walking her infant in a pram stroller approximately 100 yards from her own home when North Tonawanda Police Officer Jeff Shiesley came out of his own home and acted in a menacing fashion brandishing and displaying a bludgeon, bat, or club, and the Plaintiff had a right to be free from this violation of their rights.

181. While armed with the aforesaid weapon, Shiesley, upon information and belief, was

VERIFIED COMPLAINT

heard by the Plaintiff to say: "I'll fucking kill you bitch!" Plaintiff had a right to be free from this violation of their rights.

182. The Plaintiff, Mrs. Karcz, quickly walked away, but activated her cell phone camera before attempting to pass Shiesley's residence on the opposite side of the street to make her way home. Plaintiff had a right to be free from this violation of their rights.

183. Shiesley, upon information and belief, attempted to frighten, harry, harass, and intimidate the Plaintiff with no right to do so by releasing a large unleashed dog and walking across the street directly in Jennifer Karcz's path, and the path of her infant in the pram, while still wielding the weapon. Plaintiff had a right to be free from this violation of their rights.

184. When Officer Shiesley saw the cell phone in the Plaintiff's hand, he finally yielded the path and allowed her to pass by.

185. On July 15, 2016, North Tonawanda Police Detective Lawrence Kuebler, who recently moved into the foreclosed home next door to 357 Daniel Drive where the Plaintiff and her children reside, contacted and informed the Plaintiff, John Karcz, that a warrant had been issued for his arrest for the crime of "probation violation" (VOP) by Judge Lewis in the City Court of North Tonawanda.

186. On or about December 3, 2015, City Court of North Tonawanda Judge William R. Lewis promised, on the record, not to sentence the Plaintiffs to any jail time for either

Plaintiff, and to immediately seal Mrs. Karcz conviction, in exchange for the Plaintiffs entering a false guilty plea in satisfaction of the charges against them, forcing the guilty plea by unethical legal duress, and upon information and belief, in conspiracy with the prosecution. Plaintiffs had a right to be free from this violation of their rights.

187. Upon information and belief, Judge Lewis conspired with and assisted the role of the prosecution by making promises, inclusive of immediately sealing Mrs. Karcz conviction, in exchange for a coerced guilty plea. For the judge to become involved in the plea bargaining and to agree to a moderation of sentence in exchange for a guilty plea is unethical. Ergo, the criminal action was terminated by a compromise which did not provide any indicia of innocence or guilt, nor the opportunity for such issues to be determined without reasonable dispute.

188. On May 5, 2016, after accepting a guilty plea in exchange for promising no jail time and immediately sealing the conviction of Mrs. Karcz; Judge William R. Lewis sentenced the Plaintiff, Mr. Karcz, to 3 years of probation supervision while specifically ordering, on the record, that Mr. Karcz continue to work in the State of Pennsylvania, during the weekdays. Lewis also stated the Plaintiff was stupid.

189. As a result, the Court did not direct the Plaintiff to report in any specific manner, but instead directed Mr. Karcz to continue working in Pennsylvania and the order of the Court effectively precluded the Plaintiff from appearing in person to the probation office during the work week; however, Mr. Karcz was in fact available to report by telephone or on the weekends.

VERIFIED COMPLAINT

190. The probation office refused to accept this reasonable course of action, despite the fact many other probationers report only by telephone, since the overriding purpose of probation is rehabilitation, not harassment or punishment.

191. The Plaintiff explained this order of the Court to his assigned probation office both by telephone and by letter sent from his place of employment in Pennsylvania, and offered several alternatives which would allow the Court's seemingly conflicting mandate to be carried out.

192. Upon information and belief, the Court now attempts to illegally contradict its previous order of probation, by accusing the Plaintiff, John Karcz, of violating his probation sentence. Plaintiff had a right to be free from this violation of their rights.

193. Upon information and belief, by issuing an arrest warrant, Judge William R. Lewis has once again unduly exercised prejudicial behavior towards the Plaintiff, and attempting to punish the Plaintiff for his own ambiguities, errors, and contradictions.

194. There was no violation of probation as Mr. Karcz abided by all lawful orders of the Court including fines and community service completion. Under NYS CPL 410.30 (2) the Court had no reason to accept as true that there existed reasonable grounds to believe that a violation had occurred, and was once more acting in a capricious fashion against the Plaintiff in violation of his 5th Amendment rights. Plaintiff had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

195. Furthermore, when the sentence of probation was imposed, it was fixed at the maximum punishment available under law, given the judge's promise in exchange for the plea and preferential treatment for one of the Plaintiffs; and is a legal sanction in itself.

196. There is no legal permissibility for an increase of sentence or conditions under probation without due process or probable cause, and Judge Lewis ordering a warrant of arrest to do so is eviscerative of the lawful rights of Mr. Karcz to be free from double jeopardy.

197. By ordering the Plaintiff's arrest and concomitant detention, City Court of North Tonawanda Judge William R. Lewis acted in violation of the Plaintiff's federal right to protection against double jeopardy. Plaintiff had a right to be free from this violation of their rights.

198. By interfering with the Plaintiff, John Karcz's right to earn a living wage, Judge Lewis likewise violates federal double jeopardy protections, and denies the Plaintiff his federal rights under Color of Law. Plaintiff had a right to be free from this violation of their rights.

199. On July 20, 2016, the Plaintiff, John Karcz, appeared in City of North Tonawanda Court to answer and confront the allegation brought by Judge Lewis' most recent warrant.

200. Judge Lewis claimed, on the record, that he only summoned Mr. Karcz to court via a

VERIFIED COMPLAINT

"letter," stating the probation department filed a "Declaration of Delinquency" due to his own (Judge Lewis') errors in this matter.

201. Judge Lewis lied, again demonstrating a pervasive pattern of incompetence and bias, in making this false assertion, as no "letter" of summons or was ever produced or sent to the Plaintiff. Plaintiff had a right to be free from this violation of their rights.

202. The only mail received by the Plaintiff, Mr. Karcz, from the Court was a notice of "Warrant of Arrest," that was actually sent <u>after the Plaintiff had already appeared in court</u>; upon information and belief, 6 days after Lewis signed a tangible warrant.

203. Upon information and belief, Judge Lewis had also set a bail on the docket in excess of the bail for the original charge. Plaintiff had a right to be free from this violation of their rights.

204. Mr. Karcz, by previous appointment, met with Detective Kuebler and was arrested; Kuebler oversaw the "booking" process in the area adjacent to the court room where the Plaintiff would see Judge Lewis.

205. The Plaintiff brought sufficient funds for bail, but was not allowed to post it by Detective Kuebler. Plaintiff had a right to be free from this violation of their rights.

206. The Plaintiff, John Karcz, had been secondarily searched upon entry to the booking area by Detective Kuebler who was assisting the booking officer with an arrest inventory.

207. Officer Richard Wydysh then entered the room, after transporting a prisoner, and

VERIFIED COMPLAINT

interjected himself into the booking without need, provocation, or necessity.

208. Officer Wydysh immediately walked behind the Plaintiff, John Karcz, and started rudely snapping latex gloves, upon information and belief, with the intent to agitate, annoy, harry, and harass the Plaintiff. Plaintiff had a right to be free from this violation of their rights.

209. Officer Wydysh ordered the Plaintiff to put his hands on his head, and began fondling Mr. Karcz from behind in an inappropriate manner. Plaintiff had a right to be free from this violation of their rights.

210. Wydysh then ordered Mr. Karcz, a devout Jew, to remove his constitutionally protected Yarmulke.  When Mr. Karcz removed his prayer cap for a momentary legally required inspection, Wydysh refused to allow him to put it back on his head. Plaintiff had a right to be free from this violation of their rights.

211. When Mr. Karcz asserted his constitutionally protected right to replace his federally protected prayer cap, Wydysh became extremely angry and began violently squeezing Mr. Karcz's hands together behind his head, causing pain and numbness. Plaintiff had a right to be free from this violation of their rights.

212. When the Plaintiff asked Wydysh to cease and desist in his act of violence, Wydysh became even angrier, then threatened and pushed the Plaintiff. Plaintiff had a right to be free from this violation of their rights.

213. Officer Wydysh then touched the Plaintiff's buttocks without provocation, and for no

VERIFIED COMPLAINT

legitimate reason. Plaintiff had a right to be free from this violation of their rights.

214. When the Plaintiff protested the impropriety of the actions being committed by Wydysh, the other police in the room, including Detective Kuebler, the booking officer (blonde female, mid-fifties), Lieutenant Willard, Officer Smith, Officer Terry Huey, ignored the acts and the concomitant protest by Mr. Karcz; and allowed Wydysh to place handcuffs on the Plaintiff, causing pain, injury, and impairment to the Plaintiff. Plaintiff had a right to be free from this violation of their rights.

215. Wydysh then intentionally touched the Plaintiff's penis through his pants. Plaintiff had a right to be free from this violation of their rights.

216. When the Plaintiff asked Officer Wydysh to cease and desist, upon information and belief, Wydysh said: "if you don't let me do this, it's going to go badly for you." Wydysh then said: "I want to see what's in your pants." Plaintiff had a right to be free from this violation of their rights.

217. Wydysh then told the Plaintiff he has continued to retain the nude video he took of the Plaintiff on June 8, 2015, and "looks at it every day." Plaintiff had a right to be free from this violation of their rights.

218. When Wydysh tried to order the Plaintiff's Yarmulke unlawfully and sacrilegiously placed in a plastic bag, Mr. Karcz asked Lieutenant Willard to bring an end to this religious abuse. Willard allowed the Plaintiff to replace his prayer cap to his head. Mr. Karcz again requested to post bail, but was ignored. Plaintiff had a right to be free from this violation of their rights.

VERIFIED COMPLAINT

219. Despite witnessing the ongoing perverse harassment by Wydysh, Willard and Kuebler then allowed Wydysh to order Mr. Karcz to take his shirt off. Plaintiff had a right to be free from this violation of their rights.

220. Wydysh made Mr. Karcz strip nude from the waist up. Plaintiff had a right to be free from this violation of their rights.

221. The Plaintiff, Mr. Karcz, was embarrassed, mortified, alarmed, frightened, and extremely violated. Plaintiff had a right to be free from this violation of their rights.

222. The acts committed by Wydysh were witnessed by several citizens who had been transported to the police station for court by other officers (Names withheld for witnesses' protection), and also the North Tonawanda Police Officers; Kuebler, Willard, Smith, and Jane Doe. The police refused to intervene as required by law. By the conduct, acts, and omissions complained of in paragraphs 205-222 herein, the Defendants violated clearly established constitutional standards under the United States Constitution of which any reasonable police officer under the circumstances would have known.

## CAUSES OF ACTION

223. As a result of the events alleged herein, the Plaintiffs and their children have been discouraged from participating in public and municipal activities, and their involvement in local activities decreased after the attacks.

224. Due to the humiliation and defamation intentionally caused by the Defendants, the Plaintiffs have been discouraged from participating in home improvement, home maintenance, yard work, gardening, and appearing outside on their own property; singularly, severally, or with their children.

225. Upon information and belief, under Chief of Police William R. Hall, the process for internal review, standardized internal affairs procedures, and or a machinery for civilians to request review of police misconduct has been abandoned, eviscerated, and disregarded. This is evidenced by the lack of response received by the plaintiffs for their valid concerns and grievances they've submitted to Hall and his staff. In so doing, the North Tonawanda Police Department officials violated clearly established constitutional standards under the law of which any reasonable police officer under the circumstances would have known.

226. As a result of the events alleged herein, and due directly to the actions taken by the individual Defendants, the Plaintiffs suffered and continue to suffer emotional trauma, discomfort, humiliation, fear, anxiety and embarrassment, and were otherwise damaged and injured.

VERIFIED COMPLAINT

227. The CITY OF NORTH TONAWANDA directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the Defendant officers, officials, and employees. The conduct of the Defendant officers and employees was a direct consequence of policies and practices of Defendant CITY OF NORTH TONAWANDA.

228. The COUNTY OF NIAGARA directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the Defendant deputies, officials, and employees. The conduct of the defendant deputies and employees was a direct consequence of policies and practices of Defendant COUNTY OF NIAGARA.

229. At all times relevant to this complaint Defendant CITY OF NORTH TONAWANDA, acting through the NTPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual Defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

230. At all times relevant to this complaint Defendant COUNTY OF NIAGARA, acting through the NCSD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual Defendants, and were a direct and proximate cause of the damages and injuries complained of herein.

231. At all times relevant to this complaint, Defendant CITY OF NORTH TONAWANDA, acting through its police department, and through the individual

VERIFIED COMPLAINT

Defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and rights to privacy. Upon information and belief, Defendant CITY OF NORTH TONAWANDA planned and implemented a policy, practice, custom and usage of violating the rights and privacy of the People, that was designed to and did preempt lawful activities by illegally entering the property of and detaining persons engaged in constitutionally protected activity, using excessive force against persons engaged in constitutionally protected activity, retaliating against witnesses to police misconduct, and discouraging police officers from reporting the misconduct of other officers. In connection with the attacks on the Plaintiffs, The CITY OF NORTH TONAWANDA consciously disregarded the illegality and unconstitutionality of said detentions, use of force, and retaliation in order to punish and suppress privacy, due process, peaceful expression, and free association. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

232. The existence of these unconstitutional customs and policies, specifically as it relates to the Plaintiffs, is evidenced by the countless repeated occurrences of similar wrongful conduct against the Plaintiffs as documented by violations of the Plaintiffs rights in the City since May 24, 2013.

233. The CITY OF NORTH TONAWANDA knew or should have known of the Defendant officers' and employees' propensity to engage in misconduct of the type

VERIFIED COMPLAINT

alleged herein. Upon information and belief, prior to September 24, 2011, the CITY OF NORTH TONAWANDA was aware of several complaints of police misconduct involving the violations of state and federal laws and retaliatory use of force against the Plaintiffs and/or the People by members of the NTPD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NORTH TONAWANDA failed to take remedial action.

234. The individual members of the Niagara County Drug Task Force (NCDTF) are described by the official Niagara Sheriff's Department website as "a combined forces unit comprised of police personnel from the Lockport and North Tonawanda Police Departments, the United States Border Patrol and the Niagara County Sheriff's Office. The Sheriff of Niagara County supports the Task Force by providing the unit headquarters, support staff and a Chief Investigator to oversee operations," since the NCSD "oversees operations," are Niagara County employees.

235. The COUNTY OF NIAGARA knew or should have known of the Defendant deputies' and employees' propensity to engage in misconduct of the type alleged herein. Upon information and belief, prior to September 24, 2011, the COUNTY OF NIAGARA was aware of several complaints of police misconduct involving the violations of state and federal laws and retaliatory use of force against the People by members of the NCSD. Despite its knowledge of such incidents of prior misconduct, the CITY OF NORTH TONAWANDA failed to take remedial action.

VERIFIED COMPLAINT

236. It was the policy and/or custom of the CITY OF NORTH TONAWANDA to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the CITY OF NORTH TONAWANDA, including, but not limited to, the incidents listed above.

237. It was the policy and/or custom of the COUNTY OF NIAGARA to inadequately and improperly investigate citizen complaints of police misconduct, and acts of misconduct were instead tolerated by the COUNTY OF NIAGARA, including, but not limited to, the incidents listed above.

238. It was the policy and/or custom of the CITY OF NORTH TONAWANDA to inadequately train, supervise and discipline its police officers, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The City did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

239. It was the policy and/or custom of the COUNTY OF NIAGARA to inadequately train, supervise and discipline its deputies and employees, including the Defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers. The County did not require appropriate in-service training or re-training of officers who were known to have engaged in police misconduct.

VERIFIED COMPLAINT

240. As a result of the above described policies and customs, police officers of the CITY OF NORTH TONAWANDA, including the Defendant officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

241. As a result of the above described policies and customs, deputies and employees of the COUNTY OF NIAGARA, including the Defendant deputies and employees, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

242. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the CITY OF NORTH TONAWANDA to the constitutional rights of the People within the city, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

243. The wrongful policies, practices, customs and/or usages complained of herein, demonstrated a deliberate indifference on the part of policymakers of the COUNTY OF NIAGARA to the constitutional rights of the People within the county, and were the direct and proximate cause of the violations of Plaintiffs' rights alleged herein.

VERIFIED COMPLAINT

### *Summary for All Causes of Action*

"Decency, security and liberty alike demand that government officials shall be subject to the rules of conduct that are commands to the citizen.  In a government of laws, existence of government will be imperiled if it fails to observe the law scrupulously.  Our government is the potent, omnipresent teacher.  For good or ill, it teaches the whole people by example.  Crime is contagious.  If the government becomes a law-breaker, it breeds contempt for the law.  It invites every man to become a law unto himself.  It invites anarchy."  *U.S. v. Olmstead, 277 U.S. 438 (1928), Justice Brandeis.*

Ultimately, the summary and substance of the Plaintiffs' Mr. and Mrs. Karcz complaint and claims are this: We the people of the United States are ruled by law, not by feelings.  If this Court allows states and their agencies to rule by feelings and not law, we become a nation without law that makes decisions based on subjectivity and objectivity. (*U.S. Const., Amdt. 14*) The municipality of North Tonawanda has been allowed to bastardize and emasculate the Constitution and the rights of its citizens to be governed by the rule of men rather than the rule of law.

It is very dangerous when governmental officials are allowed to have unfettered access to citizens' homes in violation of basic privacy. (*U.S. Const., Amdts. 4, 9*) It is also very dangerous to allow the police to violate the confrontation clause in the 6th Amendment where in this case The North Tonawanda Police Department and it's suborners with the Niagara County District Attorney's Office and the North Tonawanda City Court hides, conceals and covers up the official accusers, and attempts to punish the innocent to elevate those who made the perjurious reports.  (*U.S. Const., Amdts. 6, 8*)

VERIFIED COMPLAINT

It allows those individuals in the police department to have a safe haven to file fraudulent reports and the Court aids and abets in this violation of fundamental rights. (*U.S. Const., Amdt. 5*)  All citizens have the right to know their accuser/witnesses against them and not to be thereby falsely or maliciously accused, in order to preserve the sanctity of the rule of law and that the Constitution is the supreme law of the land.

## Claim I

(Violation of civil rights: Unlawful arrest, searches, seizures, and confinement in custody)

(4th and 14th Amendments / 42 U.S.C. § 1983/ Common Law)

244.    Plaintiffs reallege paragraphs 1 through 222.

245.    By committing the acts in Paragraphs 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 30, 33, 42, 43, 46, 47, 50, 51, 52, 55, 57, 65, 67, 68, 69, 72, 74, 75, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87 92, 95, 96, 97, 100, 101, 102, 103, 104, 105, 107, 112, 113, 115, 117, 118, 119, 121, 122, 123, 127, 128, 129, 133, 134, 203, 204, 209, 213, 216, 219, and 220, Defendants caused and/or permitted the violation of Plaintiffs' Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. §§ 1983 and 1988.

## Claim II

(Violation of civil rights: Prosecutorial Misconduct and/or Malicious Prosecution)

(1st, 4th, 5th, 6th, 9th, and 14th Amendments / 42 U.S.C. § 1983)

246.    Plaintiffs reallege paragraphs 1 through 222.

VERIFIED COMPLAINT

247.     By committing the acts in Paragraphs 92, 114, 118, 127, 129, 130, 131, 132, 136, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 170, 171, 186, and 187, Defendants caused and/or permitted the violation of Plaintiffs' First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendment rights by conspiracy and in instigating a prosecution, suborning or committing perjury, perjury, ignoring perjury, refusing to allow the Plaintiffs common decencies, abuse from a position of authority, and denying the Plaintiffs' access to potentially exculpatory information in violation of *Brady*, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. §§ 1983 and 1988.

## Claim III

(Violation of civil rights: Police Misconduct)

(4th, 5th, 6th, 9th, and 14th Amendments / 42 U.S.C. § 1983/ Common Law)

248.     Plaintiffs reallege paragraphs 1 through 222.

249.     By committing the acts in Paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 27, 30, 33, 34, 37, 38, 40, 41, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 56, 57, 58, 60, 61, 63, 64, 67, 70, 72, 73, 74, 75, 77, 78, 79, 80, 81, 82, 85, 86, 87, 89, 92, 95, 96, 102, 103, 104, 106, 108, 109, 110, 111, 112, 113, 114, 118, 119, 136, 137, 149, 150, 151, 152, 153, 154, 155, 157, 159, 160, 161, 162, 168, 170, 172, 173, 174, 180, 181, 183, 205, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217 and 219, Defendants caused and/or permitted the violation of Plaintiffs' Fourth and Fourteenth Amendment rights to be free from unethical treatment, law enforcement conspiracy, harassment, and abuse by law enforcement officers and officials,

VERIFIED COMPLAINT

thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. §§§ 1983 and 1988.

### Claim IV

(Violation of civil rights: Deprivation of Rights Under Color of Law)

(4th, 5th, 6th, 9th, and 14th Amendments / 42 U.S.C. § 1983)

250.    Plaintiffs reallege paragraphs 1 through 222.

251.    By committing the acts in Paragraphs 8, 9, 10, 12, 14, 15, 18, 19, 21, 22, 27, 30, 33, 34, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 56, 57, 58, 59, 63, 64, 67, 70, 74, 75, 81, 85, 86, 102, 103, 104, 106, 108, 109, 113, 116,117, 118, 119, 120, 121, 122, 123, 125, 129, 131, 135, 137, 139, 143, 145, 146, 147, 149, 150, 151, 154, 155, 157, 159, 161, 162, 163, 164, 165, 166, 167, 173, 175, 186, 187, 192, 193, 194, 197, 201, 203, 205, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 219, and 221, Defendants caused and/or permitted the violation of Plaintiffs' Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendment rights under Color of State Law, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

### Claim V

(Violation of civil rights: Failure to Intervene)

(4th and 14th Amendments / 42 U.S.C. § 1983)

252.    Plaintiffs reallege paragraphs 1 through 222.

253.    By committing the acts in Paragraphs 13, 14, 15, 19, 21, 22, 33, 43, 46, 47, 48,

VERIFIED COMPLAINT

49, 50, 51, 52, 53, 54, 72, 74, 79, 85, 87, 89, 103, 104, 106, 108, 113, 149, 155, 160, 161, 209, 210, 211, 212, 213, 214, 215, 216, 217, 219, and 220, Defendants caused and/or permitted the violation of Plaintiffs' Fourth, Fifth, Sixth and Fourteenth Amendment rights by ignoring their duty to intervene upon witnessing the Plaintiffs experiencing constitutional violations by fellow officers, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

## Claim VI

(Violation of civil rights: Failure to Protect)

(4th and 14th Amendments / 42 U.S.C. § 1983)

254.    Plaintiffs reallege paragraphs 1 through 222.

255.    By committing the acts in Paragraphs 47, 48, 49, 50, 51, 52, 54, 59, 72, 74, 79, 80, 81, 89, 209, 210, 211, 212, 213, 214, 215, 216, 217, 219, and 220, Defendants caused and/or permitted the violation of Plaintiffs' Fourth, Fifth, Sixth and Fourteenth Amendment rights by ignoring their duty to protect the Plaintiffs from constitutional violations by fellow officers, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

## Claim VII

(Violation of civil rights: Improper Use of Force)

(4th and 14th Amendments / 42 U.S.C. § 1983/ Common Law)

256.    Plaintiffs reallege paragraphs 1 through 222.

VERIFIED COMPLAINT

257.     By committing the acts in Paragraphs 14, 15, 18, 19, 21, 212, and 214,

Defendants caused and/or permitted the violation of Plaintiffs' Fourth and Fourteenth

Amendment rights by suborning perjury, ignoring perjury, and denying the Plaintiffs'

protection from uses of force which were not "objectively reasonable" based on the totality of

the circumstances, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. §§

1983 and 1988.

## **Claim VIII**

(Violation of civil rights: False Imprisonment/ False Arrest)

(4th and 14th Amendment / 42 U.S.C. § 1983/ Common Law)

258.     Plaintiffs reallege paragraphs 1 through 222.

259.     By committing the acts in Paragraphs 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, and

55, Defendants caused and/or permitted the violation of Plaintiffs' Fourth, and Fourteenth

Amendment rights against false imprisonment involving restraint the Plaintiff in a bounded

area without probable cause or consent, thereby entitling Plaintiffs to recover damages

pursuant to 42 U.S.C. §§ 1983 and 1988.

## **Claim IX**

(Violation of civil rights: Intentional Infliction of Emotional Distress)

(42 U.S.C. § 1983/ Common Law)

260.     Plaintiffs reallege paragraphs 1 through 222.

VERIFIED COMPLAINT

261.   By committing the acts in Paragraphs 13, 19, 21, 22, 26, 27, 31, 33, 40, 41, 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 55, 59, 70, 72, 73, 74, 75, 79, 81, 82, 83, 84, 85, 104, 109, 110, 121, 135, 136, 139, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 159, 160, 161, 162, 163, 164, 167, 168, 170, 171, 172, 173, 175, 177, 178, 179, 180, 181, 185, 187, 192, 197, 198, 200, 201, 203, 205, 206, 207, 208, 209, 210, 213, 215, 217, 218, 219, 220, and 221, Defendants caused and/or permitted the violation of Plaintiffs' federally protected rights by intentionally or recklessly acting in a way that caused emotional injury and/or emotional distress, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. §§ 1983 and 1988.

## Claim X

(Violation of civil rights: Sexually Motivated Mistreatment of Arrestee)

(4th, 5th, 8th, and 14th Amendments / 42 U.S.C. § 1983)

262.   Plaintiffs reallege paragraphs 1 through 222.

263.   By committing the acts in Paragraphs 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 85, 209, 210, 213, 215, 217, 218, 219, 220, and 221, Defendants caused and/or permitted the violation of Plaintiffs' Fourth, Fifth, Eighth, and Fourteenth Amendment rights by subjecting the Plaintiff to unwanted sexual advances, objectification, and molestation while in custody or under seizure, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

## Claim XI

(Violation of civil rights: Violation of Due Process)

(14th Amendment / 42 U.S.C. § 1983)

VERIFIED COMPLAINT

264.    Plaintiffs reallege paragraphs 1 through 220.

265.    By committing the acts in Paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 27, 30, 33, 34, 37, 38, 40, 41, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 56, 57, 58, 60, 61, 63, 64, 67, 70, 72, 73, 74, 75, 77, 78, 79, 80, 81, 82, 85, 86, 87, 92, 95, 96, 102, 103, 104, 106, 108, 109, 110, 111, 112, 113, 114, 118, 119, 136, 137, 148, 149, 150, 151, 152, 153, 154, 155, 157, 159, 160, 161, 162, 168, 170, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 183, 187, 205, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217 and 219, Defendants caused and/or permitted the violation of Plaintiffs' Fourteenth Amendment right to Due Process, thereby entitling Plaintiffs to recover damages pursuant to 42 U.S.C. § 1983.

## Claim XII

(*Respondeat Superior* Liability of the City of North Tonawanda for State Law Violations)

(Common Law Claim)

266.    Plaintiffs reallege paragraphs 1 through 220.

267. The conduct of Defendants WILLIAM R. HALL; THOMAS E. KRANTZ; ROBERT LABUSHESKY; KAREN SMITH; TODD BUSH; ROBERT KOLATA; JAMES MUEHLBAUER; LAWRENCE KUEBLER; SCOTT WILLARD; STEPHEN ENDRES; TERRY HUEY; LEE BOLSOVER; ROBERT BOHNSTADT; SHAWN LARSON; DANIEL MAHONEY; JEFF SHIESLEY; DARYL E. TRUTY; RICHARD WYDYSH; AND NORTH TONAWANDA POLICE OFFICERS JOHN DOE I, II, III, IV, V, and JANE DOE alleged herein occurred while they were on duty, in and during the

course and scope of his duties and functions as a North Tonawanda police officer, and while they were acting as an agent, officer, servant and employee of Defendant CITY OF NORTH TONAWANDA. As a result, Defendant CITY OF NORTH TONAWANDA is vicariously liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

## Claim XIII

(*Respondeat Superior* Liability of the County of Niagara for State Law Violations)

(Common Law Claim)

268.    Plaintiffs reallege paragraphs 1 through 220.

269. The conduct of Defendants JAMES R. VOUTOUR; SCOTT LOMBARDO; RONALD P. DWORZANSKI; NIAGARA COUNTY DRUG TASK FORCE OFFICERS JOHN DOE I, II, III, AND IV alleged herein occurred while they were on duty, in and during the course and scope of his duties and functions as a North Tonawanda police officer, and while they were acting as an agent, officer, servant and employee of Defendant CITY OF NORTH TONAWANDA. As a result, Defendant CITY OF NORTH TONAWANDA is vicariously liable to Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

VERIFIED COMPLAINT

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiffs request:

270. Compensatory damages in the amount of $10,000,000.00, as divided between general and special damages, according to proof, to make the Plaintiffs whole;

271. Punitive damages in a dollar value in excess of the jurisdictional limit of the Court, to punish the guilty and prevent them from taking the same or similar course of actions against other innocent parties in the future;

272. The convening and empaneling of a jury of fair-minded peers to consider the merits of the claims herein;

273. Injunctive relief, consisting of:

    a. An order prohibiting all slander and libel on the part of the Defendants as directed at the Plaintiffs;

    b. An order prohibiting each and every one of the Defendants from any and all contact, inclusive of official or private capacity, with the Plaintiffs;

    c. A directive enjoining Defendants William R. Lewis and Shawn P. Nickerson from any quasi-official conduct relating to the Plaintiffs' properties;

    d. A federal restraining order barring any of the Defendants from contact with the Plaintiffs or their immediate family members;

275. Declaratory relief establishing the lack of constitutionality of Judge William R. Lewis' actions.

274. Costs and interest and attorney's fees;

275. Such other and further relief as this court may deem just and proper.

1

2

3

4

5

Date: July 29, 2016

6

7

8

9

10

11

12

13

14

15

16

17

18

John W. Karcz, Jr.

19

20

21

22

23

Jennifer A. Karcz

24

25

26

IN PRO SE

27

28

72

VERIFIED COMPLAINT

## VERIFICATION of
## COMPLAINT

Under penalties of perjury, the undersigned declares that he or she is the *(check one box)*

Plaintiff / Defendant named in the foregoing *(check one box)* complaint/ answer and

knows the contents thereof; that the pleading is true of his or her own knowledge, except as to

those matters stated on information and belief, and that as to such matters he or she believes it to

be true.

DATED this 29th day of July , 20 16 .

*I declare under penalty of perjury under the law of the State of New York that the foregoing is true and correct.*

Jennifer A. Karcz *(Signature)*

JENNIFER A. KARCZ *(Print Name)*

Sworn before me this
29th day of July 2016.

JACLYN PALOVICK
NOTARY PUBLIC
STATE OF NEW YORK
QUALIFIED IN NIAGARA COUNTY
MY COMMISSION EXPIRES 9 / 15 / 16

**VERIFICATION of**
**COMPLAINT**

Under penalties of perjury, the undersigned declares that he or she is the *(check one box)*

(Plaintiff /)   Defendant named in the foregoing *(check one box )*   complaint/   answer and

knows the contents thereof; that the pleading is true of his or her own knowledge, except as to

those matters stated on information and belief, and that as to such matters he or she believes it to

be true.

DATED this 29th day of July, 20 16.

*I declare under penalty of perjury under the law of the State of*
*New York that the foregoing is true and correct.*

_____ *(Signature)*

JOHN W. KARCZ, JR. *(Print Name)*

Sworn before me this
29th day of July 2016

JACLYN PALOVICK
NOTARY PUBLIC
STATE OF NEW YORK
QUALIFIED IN NIAGARA COUNTY
MY COMMISSION EXPIRES 9 / 15 / 16

**16   CV 628** ∨

≈JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
John W. Karcz, Jr. and Jennifer A. Karcz

## DEFENDANTS
The City of North Tonawanda, et al

**(b)** County of Residence of First Listed Plaintiff   Niagara
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Niagara
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John W. Karcz, Jr.,
615 Main Street, P.O. Box 1553 M.P.O, Niagara Falls, NY 14301
716-491-1211

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | / ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1331
Brief description of cause:
Ongoing conspiracy by local officials and law enforcement officers to deprive civil and constitutional rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

ADR list & mediator list