UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

JOHN W. KARCZ, JR., and JENNIFER
KARCZ,

        Plaintiffs,

    v.

THE CITY OF NORTH TONAWANDA,
*c/o Mayor Arthur G. Pappas*; THE
COUNTY OF NIAGARA, *c/o County
Clerk Joseph A. Jastrzemski*; WILLIAM R.
LEWIS; SHAWN P. NICKERSON;
WILLIAM R. HALL; THOMAS E.
KRANTZ; ROBERT LABUSHESKY;
KAREN SMITH; TODD BUSH; ROBERT
KOLATA; JAMES MUEHLBAUER;
LAWRENCE KUEBLER; SCOTT
WILLARD; STEPHEN ENDRES; TERRY
HUEY; LEE BOLSOVER; ROBERT
BOHNSTADT; SHAWN LARSON;
DANIEL MAJONEY; JEFF SHIESLEY;
DARYL E. TRUTY; RICHARD WYDYSH;
NORTH TONAWANDA POLICE
OFFICERS JOHN DOE I, II, III, IV, V,
AND IV; JANE DOE, *of the North
Tonawanda Police Department (NTPD)*;
JAMES R. VONTOUR; SCOTT
LOMBARDO; RONALD P.
DWARZANSKI; NIAGARA COUNTY
DRUG TASK FORCE OFFICERS JOHN
DOE I, II, III, AND IV, *(NCDTF) of the
Niagara County Sherriff's Department
(NCSD)*; LAURA T. BITTNER, *Niagara
County District Attorneys*; KEVIN D.
CANALI, *Niagara County District
Attorneys*,

        Defendants.

———————————————————

16-CV-00628-LJV-HKS
DECISION & ORDER

On August 3, 2016, the plaintiffs, John W. Karcz, Jr., and Jennifer Karcz ("the Karczes"), commenced this action under 42 U.S.C. § 1983 and various provision of New York State law.[1]  Docket Item 1.  They allege that various officials of the City of North Tonawanda, Niagara County, and the State of New York violated their constitutional rights.  *Id.*  The allegations relate to a series of events that began with searches of the Karczes' home in May 2013; continued with John Karcz's conviction on an unspecified offense in December 2015 and his sentence to three years' probation in May 2016; and culminated in John Karcz's confinement in July 2016 as a sanction for violating the terms of his probation.  *Id.* at 9-55.

On May 30, 2019, defendants Robert Bohnstadt; Lee Bolsover; Todd Bush; Stephen Endres; William R. Hall; Terry Huey; Robert Kolata; Thomas E. Krantz; Lawrence Kuebler; Robert Labushesky; Shawn Larson; Daniel Mahoney; James Muehlbauer; Shawn P. Nickerson; North Tonawanda Police Officers John Doe I, II, III, IV, V, and IV; Karen Smith; The City of North Tonawanda ("the City"); Daryl E. Truty, Scott Willard; and Richard Wydysh (collectively, "the municipal defendants") moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss this action for failure to state a claim upon which relief may be granted.  Docket Item 16.  On June 6, 2019, defendant Jeff Shiesley "join[ed]" that motion.  Docket Item 20.  The Karczes responded to the municipal defendants' motion on June 13, 2019.  Docket Item 22.  The municipal defendants, now including Shielsey, replied on July 22, 2019.  Docket Item 56.

---

[1] The plaintiffs commenced this action *pro se*, but they retained counsel on June 18, 2020.  *See* Docket Items 71, 72.

On June 19, 2019, defendant William R. Lewis, former Judge of the City Court for the City of North Tonawanda, moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.[2]  Docket Item 34. The Karczes responded on July 9, 2019.  Docket Item 53.  Lewis replied on July 18, 2019.  Docket Item 54.

On July 25, 2019, the case was referred to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 57.  On May 28, 2020, Judge Schroeder issued two Reports and Recommendations finding that the municipal defendants' and Shiesley's motions should be granted in part and denied in part ("municipal-defendant R&R"), Docket Item 65, and that Lewis's motion should be granted ("Lewis R&R"), Docket Item 66.[3]

On June 12, 2020, the Karczes objected to the municipal-defendant R&R on the grounds that Judge Schroeder erred in finding:  that they had not adequately pleaded municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); that certain claims were barred by the statute of limitations; that their state-law claims were barred by their failure to timely file notices of claim; and that their claims against defendant Nickerson were barred by the doctrine of legislative immunity.  *See* Docket Item 70.  The Karczes also objected to the Lewis R&R, arguing

---

[2] Lewis is an officer of the State of New York's Unified Court System.  *See, e.g.*, *Fox v Doran*, 974 F. Supp. 276, 283 (S.D.N.Y. 1997).

[3] The Clerk of Court previously had granted the Karczes' requests for entries of default against defendants Laura T. Bittner, Kevin D. Canali, Ronald P. Dworzanski, Scott Lombardo, The County of Niagara, Michael Violante, and James R. Voutour (collectively, "the county defendants), Docket Items 24-30, but Judge Schroeder vacated those defaults for "good cause shown" on May 28, 2020, *see* Docket Item 67. The county defendants moved to dismiss under Rule 12(b)(6) on June 30, 2020. Docket Item 76.  That motion is pending before Judge Schroeder.

that their suit against Lewis in his official capacity is not barred by the doctrine of judicial immunity.  *See* Docket Item 69.  Lewis responded to the objections on June 23, 2020, Docket Item 74; and the municipal defendants likewise responded on June 26, 2020, Docket Item 75.  The Karczes replied on July 1 and 3, 2020.  Docket Items 78 (Lewis), 79 (municipal defendants).

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&Rs, the record in this case, the objections and responses, and the materials submitted by the parties.  Based on that *de novo* review, the Court accepts and adopts entirely Judge Schroeder's recommendation to grant Lewis's motion.  But while the Court accepts and adopts much of the municipal-defendant R&R, it respectfully disagrees with two recommendations and modifies another.   For the reasons that follow, several claims against the municipal defendants are dismissed, others may proceed, and still others may be amended.

## DISCUSSION

The Court assumes the reader's familiarity with the facts alleged in the complaint, *see* Docket Item 1, and Judge Schroeder's analysis in the R&Rs, *see* Docket Items 65, 66.

I.      **MUNICIPAL DEFENDANTS AND SHIESLEY**

A.      **The City of North Tonawanda and Official-Capacity Claims**

Judge Schroeder found that the Karczes had not adequately alleged that the City—and, by extension, the municipal defendants acting in their official capacities—were liable under *Monell*. *See* Docket Item 65 at 5-7. This Court disagrees in part.

A section 1983 claim against an individual in his official capacity "is in effect a claim against the governmental entity itself." *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 691 n.55). A municipality, and its officials sued in their official capacities, cannot be held liable under section 1983 unless the challenged action was undertaken pursuant to a municipal policy or custom. *See Monell*, 436 U.S. at 694. To state such a claim, a plaintiff must plead "three elements: (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "[A] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials," such as "the persistent failure to discipline subordinates who violate [individuals'] civil rights." *Zahra*, 48 F.3d at 685 (alteration in original) (second excerpt quoting *Batista v.*

*Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983)).[4]  "In 'limited circumstances,' a municipality may also be held liable for its failure to train its employees."  *Hernandez*, 939 F.3d at 206 (alterations in original) (quoting *Connick*, 563 U.S. at 61).

"To state a failure-to-train claim, a plaintiff must allege that 'a municipality's failure to train its employees in a relevant respect . . . amount[ed] to deliberate indifference to the rights of persons with whom the untrained employees come into contact."  *Id.* (alterations in original) (quoting *Connick*, 563 U.S. at 61).  Because "[d]eliberate indifference is a stringent standard of fault," to survive a motion to dismiss a plaintiff must plausibly allege that the municipality "fail[ed] to act when it ha[d] 'actual or constructive notice,' generally from '[a] pattern of similar constitutional violations by untrained employees,' that its training program [was] 'deficient."  *Id.* at 207 (quoting *Connick*, 563 U.S. at 61).  Stated differently, a plaintiff must allege "that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A[n allegation] of simple or even heightened negligence will not suffice."  *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (citation and alteration omitted).

With respect to their claims for unlawful searches and seizures, the Karczes adequately allege "[a] pattern of similar constitutional violations by untrained employees" that would have placed the municipality on "notice" that its training was

---

[4] *See also Decarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (holding that plaintiffs can prove deliberate indifference by showing "that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights" (citation omitted)); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (holding that a plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference" (citation omitted)).

deficient or that its officers were persistently violating citizens' constitutional rights. *See Hernandez*, 939 F.3d at 207. The Karczes assert that they "filed a letter of grievance with [defendant] Hall," then the City's Chief of Police, "on May 21, 2015[,] demanding explanation, identification, and discipline of the individual . . . [o]fficers involved in" the unlawful search of their home on May 18, 2015. *See* Docket Item 1 at 22. Although the *pro se* complaint does not clarify the specific grievances included in that letter, the Court infers that the Karczes generally complained of searches and seizures beyond the scope of the warrant as well as the excessive use of force. *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest). That is enough, at this early stage, to allege that the City was on notice that its officers were acting unlawfully. The City's alleged failure to rectify that deficiency prior the similarly-unlawful June 8, 2015 search of the Karczes' home, *see* Docket Item 1 at 24, suffices at this early stage to state a claim that the City acted with deliberate indifference to its officers' unconstitutional conduct.

The same is not true, however, with respect to the allegations that officers Shiesley and Huey, at the direction of Chief Hall, unlawfully ticketed Jennifer Karcz's vehicle in November 2013. *See* Docket Item 1 at 13-14. The complaint alleges that after the first ticket, the Karczes contacted the City's assistant attorney who informed them that they had not violated any ordinances. *Id.* at 14. It further alleges that the Karczes then "wr[o]te official complaints of grievance to [defendant Hall] regarding the trespassing," but Hall "disregarded" these complaints and "refused to speak with the Karcz[es]." *Id.* But Jennifer Karcz was not ticketed again until November 2015, *id.* at

7

46, by which time the Karczes concede that that City's code had been amended—they say unlawfully—to specifically prohibit the conduct at issue, *id.* at 44-5.  The Karczes cannot claim that the City was deliberately indifferent to its officers' unlawful enforcement of a completely new statute.  Nor can they claim, based on the lone November 2013 incident, that the City, through Hall, "acquiesce[d] in a *longstanding* practice or custom which constitute[d] the standard operating procedure of the local government entity."  *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (emphasis added) (citation omitted).

Similarly, the Karczes have not alleged *Monell* liability for the defendants' actions in "contacting journalists to publicly defame the [Karczes]."  Docket Item 70 at 9 (citing Docket Item 1 at 39-40).  The Karczes do not allege that City officials otherwise engaged in "[a] pattern of similar" conduct.  *See Hernandez*, 939 F.3d at 207.

In short, the Karczes claims against the City and the municipal defendants in their official capacities may proceed to the extent that they relate to an alleged practice of unlawfully searching citizens' home.  But they may not proceed for alleged violations arising from the ticketing of Jennifer Karcz's vehicles or from publicity following the May 18, 2015 search.

### B.  Labushesky, Bush, Kolata, Endres, Bolsover, Bonstadt, Larson, and Turty

Judge Schroeder found that the claims against defendants Labushesky, Bush, Kolata, Endres, Bolsover, Bonstadt, Larson, and Truty are barred by the applicable statute of limitations. *See* Docket Item 65 at 3.  He explained that these defendants were involved only in incidents that occurred on May 24, 2013, and July 15, 2013, but the Karczes did not file suit until August 3, 2016—that is, until after the three-year

limitations periods on any claims arising from those incidents had expired.  *Id.*  In reaching this finding, Judge Schroeder rejected the Karczes' argument that their claims nevertheless should survive because the May and July 2013 incidents were part of an "ongoing violation," some portion of which occurred after August 3, 2016.  The Court agrees with Judge Schroeder.

To the extent the Karczes allege that these defendants are liable in their official capacities under *Monell*, that argument misconstrues the continuing-violation doctrine. "When [a] plaintiff brings a [s]ection 1983 claim challenging a discriminatory policy, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted).  The doctrine "can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute *one* unlawful [act],' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act."  *Id.* (emphasis added) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)).  The doctrine's purpose is readily apparent in the context of a claim for hostile work environment because such a claim "challenges 'repeated conduct' that 'occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'"  *Id.* (quoting *Morgan*, 536 U.S. at 115).

The Second Circuit applied these principles to hold in *Shomo* "that the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise *an* Eighth Amendment claim of deliberate indifference to serious medical needs."  *Id.* at 182 (emphasis added). The continuing-violation doctrine was critical to

9

the plaintiff's claim because he did not allege "outright denial of access to care" but instead "a policy of doctors and prison staff disregarding treatment recommendations" that, cumulatively, gave rise to single Eighth Amendment claim.  *Id.*  In reaching this holding, the Court repeatedly emphasized that the continuing-violation doctrine applies where a "continuous series of events giv[es] rise to *a* cumulative injury.'" *Id.* at 320 (emphasis added) (quoting *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001)). *See also id.* (emphasis added) (explaining that *Morgan* applied the doctrine to "a series of predicate acts forming the basis for a *single* claim" (citation omitted)); *id.* (second emphasis added) (citing *Heard* for the proposition that "courts 'don't *want* the plaintiff to sue before the violation is complete,' or to bring separate lawsuits when a series of acts reasonably should be challenged as part of *one* claim" (quoting *Heard,* 253 F.3d at 319-20)).

The Karczes allege, as relevant here, that on May 24, 2013, and July 15, 2013, defendants Labushesky, Bush, Kolata, Endres, Bolsover, Bonstadt, Larson, and Truty searched their home without a "search warrant" and without "exigent circumstances . . . justify[ing] the[ir] armed entry."  *See* Docket Item 1 at 10; *see also id.* at 12.  By the terms of their own pleadings, the Karczes concede that each of these acts was a "discrete unlawful act."  *See Shomo*, 579 F.3d at 181.  The Karczes did not need to wait for additional, similar violations to occur in order to establish a "single claim."  *Id.* at 182. Stated differently, had the defendants never returned to the Karczes' home after July 15, 2013, the Karczes could have used the exact same set of facts to plead two distinct claims under the Fourth Amendment.

10

The Court notes that it is not clear, in any event, what purpose it would serve to preserve these discrete claims.  The Karczes argue that these actions "were part of [d]efendant Hall's ongoing campaign of threats, harassment, and intimidation against [the Karczes], and these incidents should not be dismissed from the complaint."  Docket Item 70 at 10.  But the issue is not whether these "incidents" should be dismissed.  It is instead whether these incidents may give rise to discrete claims under the Fourth Amendment.  To the extent the plaintiffs intend to use these events to demonstrate the existence of a "longstanding practice or custom," *Jeffes*, 208 F.3d at 61, and thereby establish *Monell* liablity for their Fourth Amendment claims against Hall and the City, the Court's decision today neither permits nor prohibits that strategy.  But to the extent the Karczes wish to preserve free-standing claims against Labushesky, Bush, Kolata, Endres, Bolsover, Bonstadt, Larson, and Truty—whether in their individual or official capacities—for their actions prior to August 3, 2013, they may not do so.

## C.    Smith

The municipal defendants also moved to dismiss all claims against defendant Smith as barred by the statute of limitations.  *See* Docket Item 16-1 at 9.  Judge Schroeder recommended denying that motion because the Karczes alleged that Smith was involved in John Karcz's July 20, 2016 arrest.  *See* Docket Item 65 at 4.  The defendants have not objected to that recommendation, and this Court agrees with it. Accordingly, defendant Smith's motion is granted to the extent it raises claims arising from incidents prior to August 3, 2013, but denied to the extent it raises claims arising from incidents after that date.

### D.      Common Law Claims and *Respondeat Superior* Liability

In their complaint, the Karczes brought a number of claims—including unlawful arrest, unlawful searches and seizures, unlawful confinement; "[p]olice [m]isconduct," excessive force,  false imprisonment, and intentional infliction of emotional distress— under both 42 U.S.C. § 1983 and the "[c]ommon [l]aw."  *See* Docket Item 1 at 63-68. The Karczes contest Judge Schroeder's finding that they failed to timely file notices of claim, as required to preserve those claims under New York law.  According to the Karczes, they in fact served notice by registered mail, although they did not include that allegation in their complaint.  *See* Docket Item 70 at 11; *see also* Docket Item 22 at 4-5. They therefore ask that the Court grant them leave to file an amended complaint.

In light of the Karczes' *pro se* status at the time they filed their complaint, the Court modifies Judge Schroeder's recommendation and grants their motion to amend. Generally, courts afford *pro se* plaintiffs an opportunity to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))).  Leave to amend pleadings should be denied only when amendment would be "futile."  *Id.*

The Karczes therefore may amend their complaint to set forth their compliance with the relevant notice-of-claim requirements.  Having granted leave to amend in this respect, the Court need not reach the Karczes' arguments with respect to the City's and

the supervisory defendants' liability under the doctrine of *respondeat superior*.  The Karczes may amend their complaint in that regard as well.

If the Karczes do not amend their complaint within 30 days, Counts I, III, VII, and VIII will be dismissed to the extent they raise common law claims. And because intentional infliction of emotional distress is not otherwise cognizable under section 1983, *see* Docket Item 65 at 5 n.1, Count IX will be dismissed in its entirety.

### E.    Nickerson

The Karczes allege that defendant Nickerson, the City's attorney, "requested an unlawful amendment" to the City's municipal code and later enforced that ordinance against Jennifer Karcz.  *See* Docket Item 1 at 44-47.  Judge Schroeder recommended that all claims against Nickerson be dismissed because he was entitled to absolute legislative and prosecutorial immunity.  Docket Item 65 at 8-10.  The Karczes do not object to Judge Schroeder's recommendation that any claims against Nickerson for his decision to prosecute Jennifer Karcz be dismissed.  *See* Docket Item 70 at 13-16.  The Court also agrees with that finding and accordingly dismisses all such claims.  But the Karczes do object to Judge Schroeder's finding with respect to legislative immunity, arguing that Nickerson did not act in a legislative capacity in proposing the amendment. *See id.*  The Court agrees with the Karczes.

"[U]nder the common law, state and local government officials . . . enjoy absolute immunity against federal civil claims asserted against them in their individual capacities" for "conduct that falls 'within the sphere of legitimate legislative activity.'"  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 190 (2d Cir. 2019) (first excerpt quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)) (second quoting *Eastland v. U. S. Servicemen's*

*Fund*, 421 U.S. 491 (1975)).  Because this immunity "attaches to particular types of *conduct*, not to particular *job titles* . . . , officials outside the legislative branch may be entitled to legislative immunity when "they perform legislative functions."  *Id.* at 191 (emphases in original) (citation omitted).

"[W]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."  *Id.* (quoting *Bogan*, 523 U.S. at 54).  When executive branch officials, such as Nickerson, seek to "claim the protections of an immunity traditionally accorded to members of the legislative branch," they must "show that their activities were 'legislative' both in form and in substance."  *Id.* (alteration and citation omitted).  An act is legislative in form when it is an "integral step[ ] in the legislative process."  *Id.* (citation omitted).  And an act is legislative in substance when it "b[ears] all the hallmarks of traditional legislation, including [that it] reflect[s] discretionary, policymaking decisions implicating the budgetary priorities of the government and the services the government provides to its constituents."  *Id.* (citation omitted).

For example, in *NRP*, the Second Circuit found that a mayor's "discretionary conduct in declining to introduce [certain] resolutions before the [municipal legislature] satisfie[d] both elements."  *Id.*  Notably, under the city's "municipal law," the mayor was "vest[ed] . . . with broad discretion over whether to introduce. . . the resolutions," and the municipal legislature could not take further action without the mayor's introduction.  *Id.* at 184.  An executive branch official, in other words, was empowered to either stop the legislative process in its tracks or move it forward.  That is to say, an executive act, by

the terms of the municipal law, was "an integral step[ ] in the legislative process." *Id.* at 191.

This Court is not persuaded, at this early stage, that Nickerson is entitled to legislative immunity for his decision to propose an ordinance allegedly targeting the Karczes. Although Nickerson was a public official, the mere combination of a public office and a legislative proposal does not, *ipso facto*, result in legislative immunity. Instead, Nickerson must show that the act of proposing legislation was an "integral step[ ] in the legislative process." *NRP*, 916 F.3d at 191. Unlike in *NRP*, where the mayor's act was a *necessary* step in the legislative process, there is no allegation in the complaint—or in the defendants' moving papers, for that matter—that Nickerson was uniquely positioned to advance this proposed ordinance.[5] In other words, according to the complaint, Nickerson acted in exactly the same manner as would any other citizen seeking to propose legislation, and Nickerson's position as a government official was not material.

Lest there be any doubt, the Court will trace Nickerson's argument to its logical conclusion. Taking the Karczes' allegations as true, what Nickerson argues is that a prosecutor seeking to retaliate against a municipal resident, may, without risking any civil liability, propose legislation targeting that individual and then enforce that legislation

---

[5] In fact, the defendants appear to assert the opposite. *See* Docket Item 16-1 at 16 ("[The p]laintiffs do not allege [that Nickerson] ha[d] the authority to unilaterally change the City code. Indeed, the City code must be changed through the City Common Council—a body independent from and not named in [the p]laintiff's [c]omplaint."). In any event, the Court is not foreclosing the argument that Nickerson, like the mayor in *NRP*, was uniquely empowered to advance (or halt) legislation. But because there is no allegation to that effect in the complaint, that issue is not before the Court on this motion to dismiss.

against the individual.  The first action would be protected by legislative immunity; the second by prosecutorial.  The Court fails to see how that expansive interpretation of legislative immunity would serve any legitimate interests.

In reaching this determination, the Court is guided by the purpose underpinning legislative immunity: "Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good."  *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).  In developing this understanding of the doctrine, the Supreme Court in *Tenney* quoted with approval the words of a former Chief Justice of the Massachusetts Supreme Judicial Court:

> These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to *execute the functions of their office* without fear of prosecutions, civil or criminal.  I therefore think that the article ought not to be construed strictly, but liberally, that the full design of it may be answered.  I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate; but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature, and *in the execution, of the office*; and I would define the article as securing to every member exemption from prosecution, for every thing said or done by him, *as a representative, in the exercise of the functions of that office*, without inquiring whether the exercise was regular according to the rules of the house, or irregular and against their rules.

*Id.* at 373-74 (quoting Coffin v. Coffin, 1808, 4 Mass. 1, 27 (Parson, *C.J.*) (emphasis added).  As alleged, Nickerson was not "execut[ing] the function of [his] office" when he proposed the ordinance.  He was merely acting as would any other citizen.  To confer immunity on such acts would seem, quite improperly, to protect Nickerson's "private indulgence" alone.

In short, the Court denies Nickerson's motion to dismiss the claims against him as they relate to his proposing a town ordinance.

F.     **Counts III, IV, VIII, and XII**

Judge Schroeder recommended dismissal of Counts III and VIII as duplicative of Count I. Docket Item 65 at 14. He also recommended dismissal of Count IV as duplicative of the Karczes' other, "more specific causes of action." *Id.* The Karczes do not object to either recommendation. The Court agrees with them as well and accordingly orders dismissal of Counts III, IV, and VIII.

Judge Schroder recommended dismissal of Count XII on other grounds and accordingly did not consider the defendants' argument that this count was duplicative. *See id.* The Court agrees with the defendants that *respondeat superior* is a theory of liability, not a substantive cause of action. Accordingly, Count XII is dismissed. In their amended complaint, the Karczes should clarify, for each remaining cause of action, which specific parties they seek to hold liable under the doctrine of *respondeat superior*.

G.     **Claims for Punitive Damages**

Judge Schroeder found that "in light of [the Karczes'] representation that they are not seeking punitive damages against the City, it is recommended that this aspect of [the] defendant's motion be denied as moot." Docket Item 65 at 10. Neither party has objected to that recommendation. The Court accordingly adopts Judge Schroeder's recommendation.

H.     **The Karczes' Request for Injunctive Relief**

The Karczes included a request for various forms of injunctive relief in their complaint. *See* Docket Item 1 at 71. The municipal defendants argued before Judge Schroeder that this request was improper, *see* Docket Item 16-1 at 20, but they have not objected to his finding that because an injunction is not a separate cause of action,

17

but instead a remedy, dismissal is inappropriate.  Docket Item 65 at 13.  The Court agrees with Judge Schroeder, in any event, and accordingly denies that part of the defendants' motion.

## II.     LEWIS

The Karczes also object to Judge Schroeder's recommendation to dismiss their claims against Lewis.  Docket Item 69.  They do not contest Judge Schroeder's finding that all claims against Lewis in his official capacity are barred by the Eleventh Amendment.  *Id.* at 3.  They instead contest his finding that all claims against Lewis in his individual capacity are barred by the doctrine of judicial immunity.  *Id.* at 6-9.  That argument is without merit.

Judicial "immunity is overcome in only two sets of circumstances."  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity."  *Id.*  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id.* at 12.

For the reasons stated in Judge Schroeder's R&R, Lewis acted in his judicial capacity during all events underlying the Karczes' claims.  *See* Docket item 66 at 3.  To the extent the Karczes argue that Lewis acted extrajudicially in "promis[ing], on the record, not to sentence [them] to any jail time . . . and to immediately seal [Jennifer] Karcz['s] conviction, in exchange for [the Karczes'] entering . . . guilty plea[s]," *see* Docket Item 69 at 7; *see also* Docket Item 1 at 48-49, that allegation is not enough to plausibly claim that Lewis engaged in the "prosecutorial act" of plea bargaining.  *Cf. Lopez v. Vanderwater*, 620 F.2d 1229, 1235 (7th Cir. 1980) (holding that judge was

18

immune from suit for "his acts of arraigning, convicting, and sentencing [the plaintiff]" but not for his "decision to prosecute," "determin[ation of] the offense to be charged," "prepar[ing] a written charge," "prepar[ing] a guilty plea," and "present[ing] the charge and plea form to himself").  Under New York law, "when a sentence is agreed upon by the prosecutor and a defendant as a predicate to entry of a plea of guilty, the court or the prosecutor must orally on the record, or in writing filed with the court, state the sentence agreed upon as a condition of such plea."  N.Y. Crim. Proc. L. § 340.20(4). The Karczes' allegations merely restate this standard procedure.

Similarly, the Karczes' do not plausibly allege that Lewis acted "in the complete absence of *jurisdiction*."  *See Mireles*, 502 U.S. at 11.  "[T]he scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'"  *Id.* at 356-56 (quoting *Bradley*, 80 U.S. at 351). The Supreme Court has

> illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7 (citing *Bradley*, 80 U.S. at 352).  In light of these principles, the Karczes's allegation that Lewis issued a warrant unsupported by probable cause falls far short of an allegation that Lewis lacked jurisdiction over the matter.

**CONCLUSION**

For the reasons stated above and in the Lewis and municipal-defendant R&Rs, Lewis's motion to dismiss, Docket Item 34, is GRANTED; the municipal defendants' and Shiesley's motions to dismiss, Docket Items 16, 20, are GRANTED in part and DENIED in part; and the Karczes' motion to amend the complaint is GRANTED.

The Karczes are advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, any amended complaint must include all allegations against each of the defendants so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that Lewis's motion to dismiss is GRANTED, and the Clerk of Court shall terminate him as a party to this action; and it is further

ORDERED that Labushesky's, Bush,'s Kolata's, Endres's, Bolsover's, Bonstadt's, Larson,'s and Truty's motions to dismiss are GRANTED, and the Clerk of Court shall terminate them as parties to this action; and it is further

ORDERED that **the Karczes may amend their complaint within 30 days of the date of this decision and order**; and it is further

ORDERED that if the Karczes do not amend their complaint, Count IX and all common law claims shall be dismissed without further order; and it is further

ORDERED that the matter is referred back to Judge Schroeder for further proceedings consistent with the referral order of July 25, 2019, Docket Item 47.


SO ORDERED.


Dated:          September 2, 2020
                Buffalo, New York


                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE

21