**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**JOHN W. KARCZ, JR.,**
**JENNIFER A. KARCZ,**

                    **Plaintiffs**


          **-v-**                                    **16-CV-0628V(Sr)**

**CITY OF NORTH TONAWANDA,**
**THE COUNTY OF NIAGARA,**
**SHAWN P. NICKERSON,**
**WILLIAM R. HALL,**
**THOMAS E. KRANTZ,**
**KAREN SMITH,**
**JAMES MUEHLBAUER,**
**LAWRENCE KUEBLER,**
**SCOTT WILLARD,**
**TERRY HUEY,**
**DANIEL MAHONEY,**
**JEFF SHISELEY,**
**RICHARD WYDYSH,**
**JAMES R. VOUTOUR,**
**SCOTT LOMBARDO,**
**RONALD P. DWORZANSKI,**
**MICHAEL VIOLANTE,**
**LAURA T. BITTNER, and**
**KEVIN D. CANALI,**

                    **Defendants.**

_____


                    **REPORT, RECOMMENDATION AND ORDER**

                    This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions. Dkt. #57.

**PROCEDURAL HISTORY**

Plaintiffs, proceeding *pro se*, commenced this action[1] pursuant to 42

U.S.C. § 1983 on August 3, 2016, alleging that law enforcement officers conducted

multiple illegal searches of their home and engaged in other acts of harassment

culminating in the illegal arrest, prosecution and defamation of plaintiff, John W. Karcz,

Jr. Dkt. #1.

The City of North Tonawanda defendants moved for dismissal. Dkt. #16;

Dkt. #20 & Dkt. #34. Following this Court's Report, Recommendation and Order on

those motions (Dkt. #65-66), plaintiffs obtained counsel, who filed objections with Judge

Vilardo. Dkt. ##69-72. While objections to the Report, Recommendation and Order

were pending, the County of Niagara defendants moved for dismissal. Dkt. #76.

By Decision and Order entered September 2, 2020, Judge Vilardo

granted, in part, the City of North Tonawanda defendants' motion to dismiss and

afforded plaintiffs an opportunity to amend their complaint. Dkt. #81. Plaintiffs filed an

amended complaint on October 1, 2020. Dkt. #83.

Currently pending before this Court is a motion to dismiss (Dkt. #86), by

the County of Niagara defendants, *to wit*, the County of Niagara, Niagara County Sheriff

---

[1] John Karcz has two additional actions pursuant to 42 U.S.C. § 1983 currently pending: *Karcz v. City of North Tonawanda*, 20-CV-9 and *Karcz v. City of North Tonawanda*, 20-CV-1045.Jennifer Karcz has also commenced *Karcz v. The County of Niagara*,16-CV-693.

James R. Voutour ("Sheriff Voutour"), Niagara County Sheriff's Department Captain

Scott Lombardo ("Captain Lombardo"), Niagara County Sheriff's Department Deputy

Ronald P. Dworzanski ("Deputy Dworzanski"), Niagara County District Attorney Michael

Violante ("DA Violante"), Niagara County Assistant District Attorney Laura T. Bitner

("ADA Bitner") and Niagara County Assistant District Attorney Kevin D. Canali ("ADA

Canali"), and plaintiffs' motion to strike (Dkt. #89), the County of Niagara defendants'

motion to dismiss. For the following reasons, the motion to strike (Dkt. #89), is denied

and it is recommended that the motion to dismiss (Dkt. #86), be granted in part.


**FACTUAL BACKGROUND**

As relevant to the moving defendants, plaintiffs' amended complaint

alleges that police officers from the City of North Tonawanda Police Department and the

Niagara County Sheriff's Department Drug Task Force, including Captain Lombardo and

Deputy Dworzanski, executed a search warrant at plaintiffs' home on June 8, 2015.  Dkt.

#83, ¶¶ 90, 96 & 106. Plaintiffs allege that this search was unlawful because the search

warrant included information that was stale and obtained illegally and "was predicated on

perjury by police officers, suborned and attested to in bad faith by the Niagara County

District Attorney's office." Dkt. #83, ¶¶ 97, 124, 126 & 131.


When John Karcz complained that the search was illegal, City of North

Tonawanda Police Detective Muehlbauer ("Detective Muehlbauer"), informed him that

"the District Attorney [sic], Bittner [sic], got me a search warrant, and the judge signed

it." Dkt. #83, ¶ 102. When John Karcz asked Deputy Dworzanski if he lied to the Judge,

Deputy Dworzanski responded: "So what? He (Judge Lewis)[2] . . . signed it without even looking at it, as soon as he heard your name." Dkt. #83, ¶ 105. Plaintiffs reiterate that the prosecutor "took on police work" by "assisting the police in preparing the search warrant affidavit and application." Dkt. #83, ¶ 128. Plaintiffs further allege that the North Tonawanda Police Department and the Niagara County Sheriff's Department, "in conspiracy with and under direction from The Niagara County District Attorney's Office intentionally and/or recklessly withheld potentially exculpatory information from the court." Dkt. #83, ¶ 141. Plaintiffs also assert that the search warrant was invalid on its face. Dkt. #83, ¶ 125.

Captain Lombardo and Deputy Dworzanski, *inter alia*, are alleged to have directed the "intentionally illegal search." Dkt. #83, ¶ 96. Plaintiffs allege that law enforcement officers, including Deputy Dworzanski, intentionally damaged their home and property and searched beyond the scope of the warrant. Dkt. #83, ¶¶ 106-123. Deputy Dworzanski is specifically alleged to have intentionally damaged "an expensive WIFI thermostat" and windows. Dkt. #83, ¶¶ 113-114. He is also alleged to have searched a garage safe from which jewelry was taken. Dkt. #83, ¶¶ 116-117. Unidentified Niagara County Drug Task Force Officers are alleged to have damaged property, including CCTV cameras. Dkt. #83, ¶ 123. Plaintiffs allege that DA Violante suborned a pervasive disregard for the law by refusing to prosecute the law enforcement officers who committed felonious criminal acts in their home. Dkt. #83, ¶ 152.

---

[2] By Decision and Order entered September 2, 2020, the Hon. Lawrence J. Vilardo dismissed plaintiffs' claims against North Tonawanda City Court Judge William R. Lewis as barred by the doctrine of judicial immunity. Dkt. #81, pp.18-19.

Jennifer Karcz alleges that she was "unlawfully charged days later" and that her prosecution was without probable cause. Dkt. #83, ¶¶ 133 & 135. Plaintiffs allege that Sheriff James Voutour issued press releases, which included photographs inside plaintiffs' residence, to deliberately defame John Karcz. Dkt. #83, ¶¶ 155-156. As a result, John Karcz was terminated from his employment and has been unable to obtain new employment. Dkt. #83, ¶¶ 157-158 & 161.

Plaintiffs allege that ADA Bitner and ADA Canali refused "defense counsel access to potentially exculpatory information in the perjured search warrant affidavits." Dkt. #83, ¶¶ 143 & 150. More generally, plaintiffs allege that the Niagara County District Attorney's Office conspired to deprive them access to substantial justice by advising the North Tonawanda Police Department and/or the Niagara County Drug Task Force "in investigative and search warrant affidavit production." Dkt. #83, ¶ 144.

John Karcz alleges that ADA Canali informed City of North Tonawanda Police Detective Kuebler, who informed plaintiff, that the case was "very weak" because it was "based primarily on a questionable 'wellness check' and a fatuous 'protective sweep' made while Mrs. Karcz was erroneously being held at gunpoint by police," and that ADA Canali doubted the veracity of law enforcement officers, but claimed he was unauthorized to drop the charges. Dkt. #83, ¶ 145.

To "hide the illegalities," ADA Canali allegedly proposed "a plea bargain unrelated to the search warrant, *to wit*, criminal charges against the Plaintiffs for child

endangerment." Dkt. #83, ¶ 146. In tacit acknowledgment of the illegality, plaintiffs allege that ADA Canali "insisted on dropping all charges brought about by the reasonably excludible evidence of the search." Dkt. #83, ¶ 147. Plaintiffs also allege that ADA Bitner "refused to provide the search warrant affidavit to any of the Plaintiff's three attorneys, and threatened to take retributive and retaliatory actions against the Plaintiffs if the plea bargains were not accepted by both without access to the exculpatory evidence derivable from the affidavit." Dkt. #83, ¶ 148. Plaintiffs allege that the plea bargains "were not for lesser included crimes or even related to those charged under the dubious search warrant." Dkt. #83, ¶ 149. Plaintiffs allege that Judge Lewis promised not to sentence plaintiffs to any jail time and to immediately seal Jennifer Karcz's conviction in exchange for their "false" and "coerced" guilty pleas. Dkt. #83, ¶¶ 191-193. On May 5, 2016, John Karcz was sentenced to three years of probation. Dkt. #83, ¶ 193.

Plaintiffs' amended complaint asserts the following causes of action against all defendants pursuant to 42 U.S.C. § 1983: (1) unreasonable search and seizure; (2) false arrest; (3) false imprisonment; (4) malicious prosecution and prosecutorial misconduct; (5) failure to intervene and protect; and (6) excessive force,[3] all in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as well as (7) violation of plaintiffs' Fourteenth Amendment right to Due Process. Dkt. #83. In their eighth cause of action, plaintiffs allege conspiracy to violate

---

[3] Plaintiffs' sixth cause of action also includes a common law claim for assault and battery. Dkt. #83, p.51.

plaintiffs' constitutional rights. Dkt. #83. Plaintiffs also seek to hold the City of North Tonawanda and Niagara County responsible for failure to supervise and train their employees pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Dkt. #83.

## DISCUSSION AND ANALYSIS

### Motion to Strike

Defendants proffer the search warrant and supporting affidavit of Detective Muehlbauer and Deputy Dworzanski on the grounds that it is incorporated by reference in the complaint and amended complaint. Dkt. #86-4, pp.6-7.

Plaintiffs argue that the search warrant should be stricken because it is extrinsic to the pleadings. Dkt. #89-2, pp.6-7. Plaintiffs also argue that defense counsel's affidavit in support of the motion to dismiss (Dkt. #86-1), should be stricken because it contains hearsay and legal argument and contributes to an excessive number of pages submitted in support of their motion to dismiss. Dkt. #89-2, pp.3-6.

Defendants respond that it is clear that the search warrant is integral to plaintiffs' complaint. Dkt. #89-2, pp.2-4. Defendants also argue that the affidavit appropriately sets forth the procedural history of the case, including the fact that the motion to dismiss was pending when Judge Vilardo allowed plaintiffs to amend their complaint, causing defendants to move to dismiss the amended complaint. Dkt. #90-1,

p.4. Given the length of plaintiffs' complaint and amended complaint, defendants also attached their original motion for efficiency. Dkt. #90-1, p.4.

Plaintiffs reply that defense counsel's affidavit attempts to contradict the factual allegations in their amended complaint. Dkt. #91, pp.2-3. Plaintiffs also argue that defendants have created a maze of motion papers well in excess of page limitations. Dkt. #91, pp.4-5. Plaintiffs assert that the search warrant affidavit was hidden from the plaintiffs until the instant motion to dismiss was filed because the County defendants "knew that the search warrant affidavit was improperly obtained." Dkt. #91, p.5. Plaintiffs argue that defendants should not be permitted to use the search warrant affidavit in support of their motion to dismiss when they failed to disclose it pursuant to their obligations under *Brady*. Dkt. #91, p.6.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *BankUnited, N.A. v. Merritt Env. Consulting Corp*., 360 F. Supp.3d 172, 183 (S.D.N.Y. 2018) (internal quotation omitted). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document

"even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp*.,
418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v.
Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "A document is integral to the
complaint where the complaint relies heavily upon its terms and effect." *Goel v. Bunge,
Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

The affidavit for a search warrant is integral to plaintiffs' complaint and was
proffered to the Court in reply to the County of Niagara defendants' original motion to
dismiss (Dkt. #82-1), which preceded the filing of plaintiffs' amended complaint. Dkt.
#83. Thus, the search warrant and supporting affidavit were available to plaintiffs'
counsel at least prior to the filing of plaintiffs' amended complaint and prior to the filing of
this motion to dismiss. Dkt. #86. In any event, given plaintiffs' factual assertions
regarding the search warrant and supporting affidavit, it is appropriate for the Court to
consider these documents in assessing the County defendants' motion to dismiss. *See
Green v. City of Mount Vernon*, 96 F. Supp.3d 263, 284 (S.D.N.Y. 2015) (collecting
cases considering search warrant and supporting affidavit in deciding motion to dismiss
causes of action for unreasonable search and seizure, false arrest and false
imprisonment).

The Court will not consider any factual allegations or legal arguments
contained within affidavits submitted to the Court. *See BankUnited*, 360 F.Supp.3d at
184 (affidavits of counsel "are generally properly used only to describe the documents
attached to them as exhibits for the Court's consideration, not to advance factual

averments or legal arguments."), *quoting Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 F. App'x 34 (2d Cir. 2015). Because the Court declines to consider any factual averments or legal arguments contained in defense counsel's supporting affidavit, it is not necessary to strike portions of the affidavit and/or convert defendant's motion to one for summary judgment. *Degrosiellier v. Solomon & Solomon*, P.C., No. 00-CV-1065, 2001 WL 1217181, at *2 (N.D.N.Y. Sept. 27, 2001); *See also, Black v. Buffalo Meat Serv., Inc*., 2021 WL 763723, at *3-4 (W.D.N.Y. Feb. 26, 2021) (exercising discretion to disregard rather than strike attorney affidavit because striking a paper is a harsh remedy that impairs the record).

### Judicial Notice

The Court may take judicial notice of documents filed in other cases and other courts, not for the truth of the matter, but to establish the fact of such litigation and related filings. *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,* 146 F.3d 66, 70 (2d Cir. 1998); *Belsito v. County of Erie,* 19-CV-215, 2019 WL 6292143, at *3 (W.D.N.Y. Nov. 25, 2019). Although there is some disagreement over the practice, courts also take judicial notice of public documents, including police reports, arrest reports, and criminal complaints and other charging instruments to establish the existence and legal effect of the document and the statements contained therein, but not the truth of such statements. *See Alvarez v. County of Orange, N.Y.*, 95 F. Supp.3d 385, 397 (S.D.N.Y. 2015)*; See also Reid v. City of N.Y.,* 20 Civ. 9243, 2022 WL 2967359, at *7 (S.D.N.Y. July 27, 2022); *Delgado v. City of N.Y.,* 19 Civ. 6320, 2021 WL 2473817, at *2 (S.D.N.Y. June 17, 2021); *Isaac v. City of N.Y.*, 16-CV-4729, 2018

WL 5020173, at *5 (E.D.N.Y. Aug. 6, 2018), *R&R adopted*, 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018); *Tower Properties LLC v. Village of Highland Falls*, 14-CV-4502, 2015 WL 4124499, at *10 n.5 (S.D.N.Y. July 7, 2015).

### Motion to Dismiss

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S.at 679. While the factual allegations need not be detailed, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Stated another way, threadbare recitations of the elements of a cause of action, supported by merely conclusory statements, will not suffice. *Iqbal*, 556 U.S. at 678. Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

<u>42 U.S.C. § 1983</u>

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016); *See Burgess v. Banasike*, 636 F. Supp.3d 351, 357 (W.D.N.Y.) (*respondeat superior* liability is not available in a section 1983 action).

### *Fourth vs Fourteenth Amendment*

Defendants argue that the Fourth Amendment controls all claims brought pursuant to the Fourth and Fourteenth Amendments. Dkt. #86-4, p.4.

With the exception of plaintiffs' seventh claim for relief, which alleges a violation of the Fourteenth Amendment's right to due process of law, each of plaintiffs' claims allege violations of the Fourth and Fourteenth Amendments, which the Court interprets as a recognition of the fact that the constitutional rights provided under the Fourth Amendment are applicable to the states through the Fourteenth Amendment's incorporation clause. *See Mapp v. Ohio*, 367 U.S. 643, 650 (1961). To the extent that

plaintiffs are attempting to assert stand alone claims under the Fourteenth Amendment in each of these causes of action, it is well established the where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess the plaintiffs' claims under that explicit provision and not the more generalized notion of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994); *See Laura v. Charles*, 219 F.3d 202, 208 (2d Cir. 2000) ("Where a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim."). Similarly, procedural due process claims cannot be predicated upon the same factual basis as claims pursuant to the Fourth Amendment. *Levantino v. Skala*, 56 F. Supp.3d 191, 203 (E.D.N.Y. 2014).

Because the Fourth Amendment provides an explicit textural source of constitutional protection, plaintiffs' claim of unreasonable search and seizure will be analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *Boans v. Town of Cheektowaga*, 5 F. Supp.3d 364, 381 (W.D.N.Y. 2014). False arrest, false imprisonment, and malicious prosecution claims are also subject to analysis under the Fourth Amendment rather than the Fourteenth Amendment. *Hawthorne v. County of Putnam*, 492 F. Supp.3d 281, 304 (S.D.N.Y. 2020). Similarly, allegations of excessive force during the course of an arrest are analyzed under the Fourth Amendment rather than the Fourteenth Amendment. *Lin v. County of Monroe*, 66 F. Supp.3d 341, 358 (W.D.N.Y. 2014). Thus, each of plaintiffs' claims, except for the seventh claim, will be analyzed under the Fourth Amendment.

**Fourth Amendment** - *Search Warrant*

Plaintiffs' first cause of action alleges that defendants "unlawfully and unreasonably entered and searched Plaintiffs and their home and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant naming plaintiffs or the premises." Dkt. #83, ¶ 223.

As members of the Niagara County Drug Task Force, Detective Muehlbauer and Deputy Dworzanski submitted an affidavit to North Tonawanda City Court Judge Lewis on June 3, 2015 seeking a search warrant for the person of John W. Karcz and the premises at 357 Daniel Drive to establish the fact the John W. Karcz was involved in the growth and storage of quantities of marijuana in violation of New York Penal Law § 221. Dkt. #86-3, p.8. In their affidavit in support of the search warrant, Detective Muehlbauer and Deputy Dworzanski affirmed that on May 14, 2015, North Tonawanda Police Lieutenant Bush responded to a "check the welfare complaint" for 357 Daniel Drive. Dkt. #86-3, p.8. Upon entering the residence, Lt. Bush detected an odor of fresh marijuana. Dkt. #86-3, p.8. After speaking with Jennifer Karcz, Lt. Bush was asked to leave. Dkt. #86-3, p.8. Detective Muehlbauer and Deputy Dworzanski informed Judge Lewis that a DEA administrative subpoena was used to obtain the power usage for the premises, revealing usage of 1,794 kilowatt hours for the period from March 26, 2015 to April 27, 2015. Dkt. #86-3, p.8. They affirmed that a "normal residence uses approximately 750 kilowatt hours of electricity per month," and that a grow operation frequently uses high intensity lights, which generally require between 150 to 400 watts each and operate up to eighteen hours per day, as a means of artificial sunlight. Dkt. #86-3, p.8. Detective Muehlbauer and Deputy Dworzanski also

informed Judge Lewis that on May 24, 2013,[4] North Tonawanda Police responded to a

missing children complaint from the premises but were refused entry to the home. Dkt.

#86-3, p.8. The affidavit states:

> After a period of time, John Karcz allowed officers to search
> the home for the children, stating that there might be some
> marihuana [sic] inside the house. When officers searched
> the basement, they found an active marihuana [sic] grow
> operation of ten to fifteen live plants which were each
> approximately two feet high and a grow light was being
> used. The grow area was surrounded by a reflective
> material. The plants were seized and no charges were filed
> at this time.

Dkt. #86-3, p.8. Judge Lewis signed a search warrant authorizing a search of the

person known as John W. Karcz and the premises at 357 Daniel Drive

> including all rooms, closets, basement, storage areas, attic
> and any outbuildings at the residence, for the following
> property: Marihuana [sic] in violation of Section 221 of the
> revised Penal Law of the State of New York, and any
> documents, written papers, articles, property and ledgers
> that tend to show the above party(s) is in possession of
> and/or growing said marihuana [sic], and any papers, bills,
> property, or money that tend to show the scope of the
> named party(s) illicit drug enterprise, and who has control
> over said residence.

Dkt. #82-1, p.2.


Defendants argue that they are entitled to qualified immunity for their

reliance upon the facially sufficient search warrant issued by Judge Lewis. Dkt. #86-4,

pp.8-9.

---

[4] By Decision and Order entered September 20, 2020, Judge Vilardo determined that
any constitutional claim with respect to this discrete incident was barred by the statute of
limitations. Dkt. #81, pp.8-11.

Plaintiffs respond that the complaint plausibly alleges that the June 8, 2015 search warrant was issued without probable cause. Dkt. #89-2, p.8. For example, plaintiffs amended complaint alleges that the search warrant "was predicated on perjury by police officers" and "did not abide the requirements for scrupulous exactitude, particularity, or probable cause." Dkt. #83, ¶¶ 124-125. Plaintiffs also argue that the fruit of the poisonous tree doctrine prevents defendants from proffering the discovery of marijuana seized during the course of the illegal search on May 24, 2013 or the smell of marijuana observed during the course of the illegal search on May 14, 2015 in support of the June 3, 2015 search warrant. Dkt. #89-2, pp.8-9.

Defendants reply that plaintiffs' assertion of perjury and bad faith is unsubstantiated and speculative. Dkt. #90-1, p.5. Defendants argue that "[r]epeatedly asserting, without any basis, that the search warrant affidavit contains 'lies and material omissions of fact' does not make it so." Dkt. #90, p.6. Defendants reiterate that plaintiffs have failed to plausibly allege any conduct on the part of Deputy Dworzanski, or any other County Defendant, that might overcome the presumption of reasonableness afforded to a law enforcement officer executing a search pursuant to a duly executed search warrant. Dkt. #90-1, p.6. Deputy Dworzanski notes that he is not alleged to have been involved in any encounters with plaintiffs that provided the factual basis for the search warrant. Dkt. #90-1, p.6. Defendants also argue that the fruit of the poisonous tree doctrine is limited to criminal prosecutions. Dkt. #90-1, pp.6-7.

Qualified immunity affords law enforcement officers immunity from suit, not simply from liability. *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017). As a result,

"qualified immunity questions should be resolved at the earliest possible stage of

litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). "At the motion to

dismiss stage of a civil damages action, a defendant is entitled to the shield of qualified

immunity if the allegations of the complaint fail to state a claim that his conduct violated

'clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Charles W. v. Maul*, 214 F.3d 350, 356-57 (2d Cir. 2000), *quoting Harlow

v. Fitzgerald*, 457 U.S. 800, 818 (1982).


To be valid under the Fourth Amendment, a search warrant must (1) be

based on probable cause; (2) be supported by oath or affirmation; (3) describe with

particularity the place to be searched; and (4) describe with particularity the things to be

seized. *Green v. City of Mt. Vernon*, 96 F. Supp.3d 263, 286 (S.D.N.Y. 2015). To satisfy

the particularity requirement, a warrant must: (1) identify the specific offense for which

the police have established probable cause; (2) describe the place to be searched; and

(3) specify the items to be seized by their relation to designated crimes. *Galgano v.

County of Putnam, N.Y.*, 16-CV-3572, 2024 WL 1623401, at *81 (S.D.N.Y. April 15,

2024).  A warrant will generally meet this standard if it enables law enforcement officers

to ascertain and identify with reasonable certainty the items that the issuing judge has

authorized them to seize. *Id.*


"Normally, the issuance of a warrant by a neutral magistrate, which

depends on a finding of probable cause, creates a presumption that it was objectively

reasonable for the officers to believe that there was probable cause." *Golino v. City of

New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992).

However, "[a] plaintiff can demonstrate that [his] right not to be searched absent a search warrant supported by probable cause was violated where the officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." *McColley v. County of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014) (internal quotations omitted). This is the same showing required at a suppression hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *Calderan v. City of N.Y.*, 138 F. Supp.3d 593, 604 (S.D.N.Y. 2015). Thus, "[w]here an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost." *Golino*, 950 F.2d at 871. In assessing materiality, the court considers a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information. *Washington v. Napolitano*, 29 F.4th 93, 105 (2d Cir.) (internal quotation omitted), *cert. denied*, 143 S.Ct. 485 (2022). "Unsupported conclusory allegations of falsehood or material omission cannot support a challenge to the validity of [a] warrant; rather, the plaintiff must make specific allegations supported by an offer of proof." *Calderan v. City of N.Y.*, 138 F. Supp.3d 593, 604 (S.D.N.Y. 2015).

### Fruit of the Poisonous Tree

The fruit of the poisonous tree doctrine "is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect,

rather than a personal constitutional right to the party aggrieved." *United States v. Calandra*, 414 U.S. 338, 348 (1974). In other words, it "is an evidentiary rule that operates in the context of criminal procedure" which "is inapplicable to civil § 1983 actions." *Wierzbic v. Howard*, 331 F.R.D. 32, 57 (W.D.N.Y. 2019), *aff'd,* 836 Fed App'x 31 (2020). Stated another way,  "[v]ictims of unreasonable searches or seizures . . . cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes* v. City of N.Y., 176 F.3d 138, 148 (2d Cir.), *cert. denied*, 528 U.S. 964 (1999). This is because "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." *Id.* Thus, even though law enforcement lacked probable cause to stop and search the plaintiff in *Townes*, the Court of Appeals for the Second Circuit determined that they had probable cause to arrest him upon the discovery of handguns during that search because "the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Id.* at 149. In other words, "[t]he Second Circuit has clearly rejected an attempt to recover damages under § 1983 based on the fruits of the poisonous tree doctrine." *Gannon v. City of N.Y.*, 917F. Supp.2d 241, 243 (S.D.N.Y. 2013).

Therefore, even if the search of May 24, 2013 was not supported by probable cause because plaintiffs' consent to entry was coerced and even if law enforcement officers were not lawfully present in the residence in May of 2015, the evidence obtained, *to wit*, marijuana plants and the smell of marijuana, would not be excludable for purposes of assessing whether the search warrant affidavit submitted to Judge Lewis in June of 2015 violated plaintiffs' constitutional rights. *See Townes*, 176

F.3d at 147 (in the absence of evidence that the police officer misled the judge, defendant's motion to dismiss § 1983 claim that he was subjected to unconstitutional seizure and search granted); *Wierzbic*, 331 F.R.D. at 57 (recognizing that even though plaintiff's criminal convictions were reversed on appeal because the law enforcement officer trespassed, that "does not negate any probable cause supporting [plaintiff's] arrest to establish § 1983 liability.").

*May, 2015 Wellness Check*

Plaintiffs argue that the search warrant affidavit falsely claims that Lt. Todd Bush entered the plaintiffs' home while performing a wellness check when Jennifer Karcz actually spoke to the officers through a locked screen door with the officers 10-20 feet away, making it impossible for Lt. Bush to have smelled marijuana in the basement. Dkt. #89-2, p.10. Plaintiffs dispute the accuracy of the May 14, 2015 date,[5] arguing, "[a]s alleged in the complaint, a wellness check was performed by the [d]efendants on May 23, 2015." Dkt. #89-2, p.9 n.1.

Plaintiffs' amended complaint alleges that Jennifer Karcz had been painting in her home on May 23, 2015 when she heard a knock at her front door at

---

[5] An Incident Report submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, indicates that a caller reported a female screaming for help and a second caller indicated a "male female domestic," and that "1 party poss has a gun" at approximately 9:15 pm on May 14, 2015. Dkt. #70-10 at p.3. Upon arrival, North Tonawanda Police Officers observed a child in the window of the home but no one answered the door. Dkt. #70-10 at p.3. A neighbor reported that a male had left the home in a SUV. Dkt. #70-10 at p.3. After attempting to call John Karcz, North Tonawanda Police Officers entered the residence and made contact with Jennifer Karcz, who appeared to be highly intoxicated and displayed no indication of a physical altercation. Dkt. #70-10, p.3. Ms. Karcz reported that she had been sleeping for hours and her husband was at work. Dkt. #70-10, p.3.

approximately 1:00 pm and observed North Tonawanda Police Officers looking through her windows. Dkt. #83, ¶ 82. She "spoke through a locked screen door to the officers 10 to 20 feet away" and one of the officers advised her that they had received a call that "it was too quiet."[6] Dkt. #83, ¶¶ 82-83.

In addition to the aforementioned encounter that plaintiffs allege occurred on May 23, 2015, plaintiffs' amended complaint also alleges that on May 18, 2015, Jennifer Karcz awoke to law enforcement officers pointing a gun at her in her home and asking where John Karcz was. Dkt. #83, ¶¶ 53-69. Regardless of whether this incident took place on May 14, 2015, as set forth in the search warrant affidavit, or on May 18, 2015, as alleged in plaintiffs' amended complaint, plaintiffs have failed to plausibly allege that law enforcement officers made a material misrepresentation to Judge Lewis when they advised him that Lt. Todd Bush detected an odor of fresh marijuana when he entered the home for a check the welfare complaint within three weeks of the search warrant application.

*March - April, 2015 Electrical Usage*

Plaintiffs argue that this information was presented without context, *to wit*, what constitutes a "normal residence." Dkt. #89-2, p.11. Plaintiffs also argue that this information was more than a month old. Dkt. #89-2, p.12.

---

[6] An Incident Report submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, indicates that at approximately 4:30 pm on May 16, 2015, a caller was concerned about the safety of the children given the incident a few days prior and because it was unusual for no one to be around the residence, prompting North Tonawanda Police Officers to speak with Jennifer Karcz, who reported that she and the children were fine. Dkt. #70-10, p.4.

A warrant may be found to lack probable cause where the facts supporting criminal activity have grown stale by the time the warrant issues. *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir.), *cert. denied*, 577 U.S. 968 (2015). There is no bright-line rule for staleness, which must be evaluated on the basis of the facts of each case, with the age of the facts alleged and the nature of the conduct alleged to have violated the law as critical factors to be considered. *Id.* In the instant case, consideration of electricity usage for a billing cycle which encompassed 37-66 days before the search warrant application is not obviously stale, particularly given that the suspected criminal activity involved a marijuana grow operation which could reasonably be expected to continue over a period of time. The determination as to whether this information was sufficiently timely and persuasive was within the province of the issuing magistrate and would not support a lack of good faith reliance on the part of law enforcement officers.

*May, 2013 Entry*

Plaintiffs argue that Detective Muehlbauer and Deputy Dworzanski materially misrepresented the conduct of law enforcement officers by failing to inform Judge Lewis that plaintiffs refused entry into the residence until North Tonawanda Police Officer Kalota picked up a hammer from a nearby toolbox and threatened to smash the window if plaintiffs did not consent to search.[7] Dkt. #89-2, p.10. In any event,

---

[7] The police report submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, indicates that the North Tonawanda Police Department responded to 357 Daniel Drive at approximately 11:45 on May 24, 2013 for a report of two missing three-year olds and were denied permission to search the residence for the children by Jennifer Karcz. 20-CV-1045 at Dkt. #70-9, p.5. When John Karcz arrived home, he also refused to allow entrance into the home until law enforcement advised that they would enter regardless due to the exigent circumstances, prompting John Karcz to admit that he had

plaintiffs' argue that the presence of marijuana in 2013 is too stale to be of relevance in 2015. Dkt. #89-2, p.10. In this Court's opinion, the omission of plaintiffs' allegations that plaintiffs only allowed law enforcement to search their residence for their missing children after they were informed that due to the emergency circumstances presented, law enforcement officers would gain entry by smashing a window, is immaterial to the assessment of whether the presence of marijuana plants in the residence in March of 2013 supported probable cause to believe that marijuana plants would be present in June of 2015. Furthermore, the determination as to whether evidence of a prior discovery of marijuana plants was sufficiently timely and persuasive for purposes of establishing probable cause in June of 2015 was within the province of the issuing magistrate. However, even if the entirety of the information presented to Judge Lewis relating to the 2013 search was excised from the search warrant application, the remaining information, *to wit*, that law enforcement officers smelled marijuana after entering the residence to conduct a a wellness check in May of 2015 and then obtained information demonstrating unusually high electricity usage, was sufficient to provide probable cause for Judge Lewis to believe that marijuana plants would be found on the premises.

---

some fireworks and a little marijuana, at which point law enforcement advised that they would not arrest him for marijuana. 20-CV-1045 at Dkt. #70-9. After Detective Kalota picked up a small sledgehammer from the porch and informed John Karcz that they were going to break in if he didn't allow law enforcement inside, John Karcz ultimately unlocked the door and allowed access. 20-CV-1045 at Dkt. #70-9, p.6. While checking the basement for the children, Detective Muehlbauer observed a marijuana grow containing 10-15 plants. 20-CV-1045 at Dkt. #70-9. Simultaneously, other law enforcement officers were searching the neighborhood for the children and found them after a lengthy search in a heavily wooded area. Dkt. #70-9, pp.3-4. After the children were located, Lt. Smith, Detective Muehlbauer and Officer Bolsover returned to 357 Daniel Drive to retrieve the marijuana plants for destruction. 20-CV-1045 at Dkt. #70-9. Child Protective Services was notified about the presence of marijuana in the residence with small children, unsafe living conditions within the house, and the Karcz's reported delay in calling law enforcement following the disappearance of their children. 20-CV-1045 at Dkt. #70-9, p.6.

In sum, plaintiffs have not plausibly alleged that Detective Meuhlbauer and Deputy Dworzanski submitted the search warrant application with the requisite awareness that it contained a false statement or omission that would be material to Judge Lewis' assessment of probable cause, let alone that plaintiffs' concerns regarding the search warrant application rise to such a level. Furthermore, plaintiffs' conclusory allegations of facial insufficiency are contradicted by the fact of the affirmation of Detective Muehlbauer and Deputy Dworzanski in support of the search warrant and the clear description within the search warrant signed by Judge Lewis of the places to be searched, the items sought, and their relationship to the crime of marijuana possession. *See Rapoport v. Asia Electronics Hldg. Co., Inc.*, 88 F. Supp.2d 179, 184 (S.D.N.Y. 2000) (where a document that is integral to the complaint contradicts the allegations of a complaint, the document controls and the Court need not accept as true the allegations in the complaint). As a result, it is recommended that plaintiffs' first cause of action be dismissed to the extent that plaintiffs' claim that defendants' entry into their residence pursuant to the search warrant issued by Judge Lewis was in violation of their constitutional rights under the Fourth Amendment.

### *Fourth Amendment - Execution of Search Warrant*

Plaintiffs' first cause of action also alleges that defendants destroyed and seized items of personal property from plaintiffs' residence without lawful authority. Dkt. #83, ¶ 225.

"Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and

the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Given plaintiffs' allegations that Captain Lombardo was present during the execution of the search warrant on June 8, 2015 where property was destroyed and that Deputy Dworzanski specifically damaged a WIFI thermostat, broke windows, and was given the combination to several safes from which valuables were taken (Dkt. #83, ¶¶ 96, 113, 114 & 117), it is recommended that this aspect of defendants' motion to dismiss be denied.

### *Fourth Amendment - Scope of Search Warrant*

Plaintiffs allege that their boat was searched and damaged even though the boat was "at an unrelated address." Dkt. #83, ¶ 112. Plaintiffs' further allege that they parked the boat "on the paved area they own in front of 351 Daniel Drive," which the amended complaint also describes as Jennifer Karcz's property and their "spare lot." Dkt. #83, ¶¶ 168, 180, 182.

To protect individuals from "exploratory rummaging not supported by probable cause," the Fourth Amendment requires that a search warrant describe with particularity the place to be searched and the items to be seized. *Hester v. Regan*, 20-CV-1153, 2023 WL 5610754, at *3 (N.D.N.Y. Aug. 30, 2023), *quoting United States v. Berschchansky*, 788 F.3d 102, 111 (2d Cir. 2015). Given that the search warrant authorizes law enforcement officers to search the premises at 357 Daniel Drive (Dkt. #82-1), plaintiffs have plausibly alleged a Fourth Amendment violation with respect to any search in front of 351 Daniel Drive. Although plaintiffs do not specifically identify which officers searched and damaged the boat, it is recommended that plaintiffs be

permitted to pursue discovery to ascertain whether any of the Niagara County defendants present during the execution of the search warrant, *to wit*, Captain Lombardo and Deputy Dworzanski, were personally involved in the search of the boat.

### Fourth Amendment - False Arrest/False Imprisonment

Plaintiffs' second cause of action alleges that defendants lacked probable cause to arrest plaintiffs. Dkt. #83, ¶ 237. Plaintiffs third cause of action alleges that defendants confined plaintiffs without probable cause. Dkt. #83, ¶ 253. Although the causes of action refer to plaintiffs, the Court notes that the amended complaint alleges that Jennifer Karcz was not present when the search warrant was executed and was "charged days later." Dkt. #83, ¶ 132.

Defendants argue that even assuming that one of the County defendants effectuated plaintiffs' arrest,[8] plaintiffs have failed to state a claim for false arrest because they concede that law enforcement officers seized marijuana plants and firearms from the residence on June 8, 2015 and they ultimately entered a guilty plea to child endangerment in satisfaction of the charges against them. Dkt. #86-4, pp.10-11.

Plaintiffs do not dispute that marijuana was seized from plaintiffs' basement on June 8, 2015, but respond that their plea to endangering the welfare of a

---

[8] The North Tonawanda Police Department Arrest Report submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, indicates that John Karcz was arrested by the Niagara County Drug Task Force and the complainants for the Information/Complaint setting forth the charges against John Karcz, *to wit*, growing of the plant known as Cannabis by unlicensed persons; criminal possession of a weapon, fourth degree, endangering the welfare of a child, and criminal contempt, second degree, are Detective Muehlbauer and Deputy Dworzanski. 20-CV-1045 at Dkt. #70-10, pp.23-28.

child cannot be viewed as a concession regarding the constitutionality of defendants'
actions. Dkt. #89-2, pp. 10& 15. More specifically, plaintiffs argue that the plea was "not
at all related to the marijuana plants and firearms that were seized as part of the illegal
June 8, 2015 search." Dkt. #89-2, p.16.

Defendants reply that plaintiffs are precluded from proceeding on their
§ 1983 claim because the contraband discovered during the course of the search is the
basis for the charge of child endangerment to which plaintiffs entered a guilty plea. Dkt.
#90-1, p.7.

Courts evaluate claims for false arrest or false imprisonment brought
pursuant to 42 U.S.C. § 1983 pursuant to the law of the state in which the arrest
occurred. "In New York, the claim colloquially known as 'false arrest' is a variant of the
tort of false imprisonment, and courts use that tort to analyze an alleged Fourth
Amendment violation in the Section 1983 context." *Singer v. Fulton Cty Sheriff*, 63 F.3d
110, 118 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996). Under New York law, a
plaintiff must prove four elements to prevail on either claim: (1) the defendant intended
to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff
did not consent to the confinement; and (4) the confinement was not otherwise
privileged. *Kee v. City of N.Y.*, 12 F.4th 150, 158 (2d Cir. 2021).

"Probable cause to arrest is a complete defense to a false arrest claim."
*Id.* A law enforcement officer has probable cause to arrest when the law enforcement
officer "has knowledge or reasonably trustworthy information of facts and circumstances

that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* So long as there is probable cause to arrest the plaintiff for any crime, law enforcement officers will not be liable for false arrest under 42 U.S.C. § 1983. *Id.* at 158-159; *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) ("a claim for false arrest turns only on whether probable cause existed to arrest a defendant . . . it is relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer."). Qualified immunity is available where the existence of probable cause for an arrest was at least reasonable and arguable. *Foster v. McCabe*, 727 F. Supp.3d 407, 419 (W.D.N.Y. 2024).

Having conceded that law enforcement officers discovered marijuana plants during the execution of the search warrant, it follows that law enforcement possessed probable cause to arrest plaintiffs for growing marijuana. Moreover, regardless of whether the endangering the welfare of a child charge was related to the discovery of marijuana plants or other observations within the home, plaintiffs' admission that they pled guilty to endangering the welfare of a child establishes probable cause to have arrested plaintiffs for that offense, which is sufficient to defeat their claims of false arrest. Accordingly, it is recommended that plaintiffs' second and third causes of action be dismissed.

### Fourth Amendment - Malicious Prosecution

Plaintiffs' fourth cause of action alleges that plaintiffs were intentionally and maliciously prosecuted and that the charges were terminated in plaintiffs' favor.

Dkt. #83, ¶ 263. Despite this conclusory assertion, plaintiffs' amended complaint specifically alleges that "in exchange for the Plaintiffs entering a false guilty plea in satisfaction of the charges against them,"[9] Judge Lewis "promised, on the record, not to sentence the Plaintiffs to any jail time . . . and to immediately seal Mrs. Karcz conviction" and that "after accepting [their] guilty plea in exchange for promising no jail time and immediately sealing the conviction of Mrs. Karcz" Judge Lewis sentenced Mr. Karcz "to 3 years of probation supervision." Dkt. #83, ¶¶ 191 & 193.

Defendants argue that plaintiffs cannot demonstrate malice or absence of probable cause given that the search on June 8, 2015 was conducted in good faith pursuant to a duly executed search warrant and the search confirmed that plaintiffs were engaged in criminal activity. Dkt. #86-4, p.14. Defendants also argue that plaintiffs' guilty plea to child endangerment in satisfaction of the charges against them precludes a determination that the proceedings terminated in their favor. Dkt. #86-4, pp.14-15.

Plaintiffs respond that a guilty plea does not necessarily bar a malicious prosecution claim where, as here, the charge to which plaintiffs pled guilty is unrelated to the initial charges. Dkt. #89-2, p.16. More specifically, plaintiffs argue the endangering the welfare of a child charge[10] was based on the observation of dirty

---

[9] In response to defendants' motion to dismiss the complaint, plaintiffs' counsel clarified that plaintiffs "plead guilty to one charge," *to wit*, endangering the welfare of a child, "and all remaining charges were dropped." Dkt. #80-1, ¶ 14.

[10] The Information/Complaint submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, accuses John Karcz of Endangering the Welfare of a Child in that "John W, Karcz Jr. did knowingly grow the plants of genus Cannabis at the house where his daughter . . . resided. Dkt. #70-10, at pp.26-27.

dishes and unfolded laundry and was "not at all related to the marijuana plants and firearms that were seized." Dkt. #89-2, p.16. Plaintiffs argue that the charges related to the marijuana and firearms[11] found in plaintiffs' home were dropped because prosecutors knew the evidence supporting those charges was obtained in violation of plaintiffs' Fourth Amendment rights. Dkt. #89-2, p.18.

To establish a claim of malicious prosecution under 42 U.S.C. § 1983, plaintiffs must allege that their Fourth Amendment rights were implicated by criminal proceedings initiated or continued against them, with malice and without probable cause, and that the criminal proceedings were favorably terminated. *Stokes v. Wayne County*, 6:23-CV-6482, 2024 WL 4262276, at *10 (W.D.N.Y. Sept. 23, 2024). Threadbare recitals of these elements do not suffice to state a claim, especially as to the element of favorable termination. *Adams v. City of N.Y.*, 21-CV-3956, 2024 WL 3875772, at *6 (E.D.N.Y. Aug. 19, 2024). In the context of malicious prosecution claims, the focus is whether there was probable cause to believe that a plaintiff could be successfully prosecuted. *Id.* at *12. If probable cause existed at the time of arrest, it continues to exist unless it is undermined by the discovery of some intervening fact. *Id.*

Although probable cause to prosecute is a complete defense to a claim of malicious prosecution, unlike probable cause to arrest, it must be established as to

---

[11] The Information/Complaint submitted in support of defendants' motion for summary judgment in *Karcz v. City of North Tonawanda*, 20-CV-1045, accuses John Karcz of Criminal Contempt in the Fourth Degree in that John W, Karcz Jr. possessed the weapons "after being convicted of attempted criminal sale of a controlled substance in the third degree (Class C Felony) on January 13, 1993." Dkt. #70-10, at p.24.

each crime charged in the underlying criminal action. *Kee*, 12 F.4th at 166. The existence of probable cause is measured as of the commencement of the judicial proceeding. *Jackson v. Nassau Cty*., 552 F. Supp.3d 350, 371 (E.D.N.Y. July 28, 2021). "A lack of probable cause generally creates an inference of malice." *Boyd v, City of N.Y.*, 336 F.3d 72, 78 (2d Cir. 2003).

"To demonstrate a favorable termination of a criminal prosecution . . . a plaintiff need only show that his prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022). "However, "[i]t is well settled that a guilty plea is not a termination in favor of the accused for purposes of a malicious prosecution claim." '*Al-Anesi v. City of N.Y.*, 18 Civ. 8439, 2022 WL 1948879, at *6 (S.D.N.Y. June 6, 2022). "This remains true even if the guilty plea was to a lesser charge, or the result of an agreement between the defendant and the prosecution." *Id.* Stated another way, a prosecution ends in a conviction for malicious prosecution purposes where a plaintiff has pleaded guilty to one charge in satisfaction of all against him. *Sabino v. Port Auth. Dep't*, 21-CV-5731, 2024 WL 3728974, at *4 (S.D.N.Y. Aug. 7, 2024)*, quoting Amigon v. Luzon,* 21-CV-2029, 2023 WL 316487, at *3 (S.D.N.Y. Jan. 19, 2023), *vacated on other grounds*, 2024 WL 2105439, at *1, n.1 (2d Cir. 2024); *See Cantey v. Martinez*, 16-CV-14, 2018 WL 2727868, at * (N.D.N.Y. June 6, 2018) (fact that charges of false personation and criminal possession of a narcotic drug with intent to sell were dismissed does not indicate that there was a favorable outcome for plaintiff to support malicious prosecution claim because the criminal proceeding as a whole ended with plaintiff's conviction for criminal possession of a controlled substance).

In the instant case, plaintiffs' concession that their guilty plea to endangering the welfare of a child was "in satisfaction of the charges against them" (Dkt. #83, ¶ 191), precludes a claim that the prosecution ended without a conviction. Accordingly, it is recommended that plaintiffs' malicious prosecution claim be dismissed.

### Fourth Amendment - Prosecutorial Misconduct

ADA Bitner and ADA Canali argue that they are entitled to absolute prosecutorial immunity for their prosecution of criminal charges against plaintiffs. Dkt. #86-4, pp.16-17. DA Violante argues that he is entitled to absolute prosecutorial immunity for his decision not to prosecute the law enforcement officers who executed the search warrant. Dkt. #86-4, p.15. To the extent that plaintiffs' complaint can be read to allege conduct involving either investigative or administrative tasks, ADA Bitner and ADA Canali argue that they are entitled to qualified immunity because plaintiffs have failed to allege that they engaged in any unreasonable conduct. Dkt. #86-4, p.18. To the extent that plaintiffs suggest that DA Violante was an official policy maker who promulgated a municipal policy of tolerating alleged police misconduct, DA Violante argues that he would not be subject to personal liability. Dkt. #86-4, p.15. DA Violante, ADA Bitner and ADA Canali also argue that they are entitled to Eleventh Amendment immunity. Dkt. #86-4, p.19.

Plaintiffs respond that the charges related to the marijuana and guns found in their home were dropped because the ADAs knew that the evidence supporting these charges was obtained in violation of plaintiffs' Fourth Amendment

rights. Dkt. #89-2, p.18. Plaintiffs argue that prosecutors are not absolutely immune for legal advice provided to police officers during the investigative phase of a criminal case, including advising officers to obtain a search warrant. Dkt. #89-2, p.23. By providing such advice, plaintiffs argue that defendants performed actions normally performed by law enforcement, which also precludes Eleventh Amendment immunity. Dkt. #89-2, p.23. With respect to DA Violante, plaintiffs respond that they have plausibly alleged a claim for supervisory liability based on his knowledge and/or acquiescence of the constitutional violations committed by the ADA defendants. Dkt. #89-2, p.23.

ADA Canali and ADA Bitner reply that plaintiffs have not alleged any facts that would suggest that they provided legal advice to the police. Dkt. #90-1, p.10. DA Violante replies that plaintiffs have not alleged any facts that would suggest that he knew of and failed to remedy alleged violations of plaintiffs' constitutional rights. Dkt. #90-1, p.10.

*Absolute Immunity*

"Absolute immunity bars a civil suit against a prosecutor for advocatory conduct that is 'intimately associated with the judicial phase of the criminal process.'" *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012), *quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *See Shmueli v. City of N.Y.*, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983.") (internal quotation omitted). However, absolute immunity does not apply when a prosecutor is not acting as an officer of the court, but is instead

engaged in investigative or administrative tasks. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009); *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (when a prosecutor functions as an administrator or performs the investigative functions normally performed by law enforcement, principles of qualified, rather than absolute, immunity should apply). In determining whether absolute prosecutorial immunity attaches, courts apply a functional approach which looks to the function being performed rather than the office or identity of the defendant. *Hill v. City of N.Y.*, 45 F.3d 653, 660 (2d Cir. 1995). The test is objective; it does not depend upon the state actor's subjective intent. *Id.* at 662. The official seeking immunity bears the burden of demonstrating that it applies. *Burns v. Reed*, 500 U.S. 478, 486-87 (1991).

Plaintiffs' allegation that ADA Bitner procured the search warrant (Dkt. #83, ¶ 102), is entitled to absolute immunity. *Kanciper v. Lato*, 989 F. Supp.2d 216, 230 (E.D.N.Y. 2016) (ADA's "role in the procurement of the search warrant," *i.e.*, drafting an affidavit in support of a search warrant and informing SPCA employee how to get it signed by local magistrate, "is protected by absolute immunity" even where plaintiff alleges ADA presented false and misleading information in the search warrant applications so long as ADA was not the affiant). Plaintiffs' allegations that ADA Bitner and ADA Canali "refused . . . defense counsel access to potentially exculpatory information in the perjured search warrant affidavits" (Dkt. #83, ¶¶ 143 & 148), and denied them *Brady* material (Dkt. #83, ¶ 151), are also entitled to absolute immunity. *Ying Li v. City of N.Y.*, 246 F. Supp.3d (E.D.N.Y. 2017) (""a prosecutor is entitled to absolute immunity even in the face of allegations of 'deliberate withholding of exculpatory information'"), *quoting Shmueli v. City of N.Y.*, 424 F.3d 231, 237 (2d Cir.

2005). Allegations that ADA Canali acknowledged that the case against plaintiffs was weak due to the search warrant's reliance upon a questionable wellness check and fruit of the poisonous tree, causing him to insist on dropping all charges involving the search so that plaintiffs would be unable to appeal (Dkt. #83, ¶¶ 145-147), and that ADA Bitner threatened retaliation if plaintiffs refused to accept the plea bargain offered (Dkt. #83, ¶ 148), are similarly barred by absolute immunity. *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (applying absolute immunity "[t]hough the prosecutor's willingness to drop some charges is . . . conditioned on the defendants' agreement to plead guilty to other charges, and . . . could be viewed as coercive"); *Taylor v. Kavanagh*, 640 F.2d 450, 453-454 (2d Cir. 1981) (prosecutor's conduct in plea bargaining negotiations entitled to absolute immunity notwithstanding allegations of fraud and breach of the prosecutor's agreement as to sentencing); *See Kent v. Cardone*, 404 Fed. App'x 540, at *2 (2d Cir. 2011) ("Absolute immunity likewise extends to an agreement to forgo prosecution in exchange for certain types of concessions.").

DA Violante's alleged refusal "to prosecute the law enforcement officers who committed felonious criminal acts in the Plaintiffs' home" (Dkt. #83, ¶ 152), clearly falls within a prosecutor's absolute immunity. *Doe v. Phillips*, 81 F.3d 1204, 1209-10 (2d Cir. 1996) ("since the prosecution-initiation decision . . . is an either-or proposition, we have recognized that a prosecutor will be absolutely immune from a claim for damages for a decision not to prosecute."). Finally, plaintiffs' allegations that DA Violante failed to properly supervise his assistants and should be held responsible for their acts (Dkt. #83, ¶ 153), fails for the same reasons the claims against his ADAs fail. *Pinaud v. County of Suffolk*, 798 F.Supp. 913 (E.D.N.Y. 1992) ("when the actions of a prosecutor

are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity."), *aff'd in part, rev'd in part, on other grounds*, 52 F.3d 1139 (2d Cir. 1995); *See Bodie v. Morgenthau*, 342 F. Supp.2d 193, 205 (S.D.N.Y. 2004) (collecting cases). Accordingly, it is recommended that the amended complaint be dismissed against ADA Bitner, ADA Canali and DA Violante.

## Eleventh Amendment Bar

The Eleventh Amendment to the United States Constitution divests the federal court of jurisdiction over claims for monetary damages against a state actor acting in his official capacity unless there is a waiver of this immunity by statute or the state consents to suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). It is well established that New York has not consented to suit for claims commenced pursuant to 42 U.S.C. § 1983 and that the civil rights statute was not intended to override a state's sovereign immunity. *Mamot v. Board of Regents*, 367 Fed. App'x 191 (2d Cir 2010), *citing Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977) *and Quern v. Jordan*, 440 U.S. 332, 342 (1979). "When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State" and is "entitled to invoke Eleventh Amendment immunity." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 536 (2d Cir. 1993). Stated another way, if "an assistant district attorney acts as a prosecutor," he "is an agent of the State, and therefore immune from suit" in his official capacity. *D'Alessandro v. City of N.Y.*, 713 Fed. App'x 1, 8 (2d Cir. 2017).  As set forth above, plaintiff's allegations against DA Violante, ADA Bitner and ADA Canali describe prosecutorial actions. As a result, it is recommended that any

claims against them in their official capacity be dismissed for lack of subject matter jurisdiction.

### Fourth Amendment - Failure to Intervene

Plaintiffs' fifth cause of action alleges that defendants failed to take reasonable steps to prevent their fellow law enforcement officers from engaging in illegal acts. Dkt. #83, ¶ 269.

Defendants argue that plaintiffs' amended complaint fails to plausibly allege that any Niagara County defendant had a reasonable opportunity to intervene and failed to take reasonable steps to do so. Dkt. #86-4, pp.19-20.

Plaintiffs respond that the complaint demonstrates that the Niagara County defendants knew from the outset that probable cause did not exist to search their home and that the County defendants failed to prevent the destruction of plaintiffs' property during the execution of the search warrant. Dkt. #89-2, p.18.

"A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." *Bryant v. Ciminelli*, 267 F. Supp.3d 467, 477 (W.D.N.Y. 2017), *quoting Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *See Forney v. Forney*, 96 F. Supp.3d 7, 13 (E.D.N.Y. 2015) ("[T]here can be no failure to intervene claim without a primary constitutional violation."). In as much as the Court recommends dismissal of plaintiffs'

claim that defendants' entry into their residence pursuant to the search warrant issued by Judge Lewis was in violation of their constitutional rights under the Fourth Amendment, it follows that law enforcement officers cannot be liable for any alleged failure to prevent such entry.

However, "[l]aw enforcement officers have an affirmative duty to intervene to prevent their fellow officers from infringing on a citizen's constitutional rights." *Rutherford v. City of Mount Vernon*, 698 F. Supp.3d 574, 608 (S.D.N.Y. 2023). Thus, as to the execution and scope of the search warrant, law enforcement officers were required to intervene to prevent the alleged theft and intentional destruction of plaintiffs' property and to have prevented their fellow law enforcement officers from searching property that was not on the premises, i.e., the boat in front of 351 Daniel Drive. Accordingly, it is recommended that defendants' motion to dismiss this cause of action be denied with respect to the Niagara County law enforcement officers alleged to have been present during the search of plaintiffs' residence, *to wit*, Captain Lombardo and Deputy Dworzanski.

### Fourth Amendment - Excessive Force

Plaintiffs' sixth cause of action, which also asserts a common law claim for assault and battery, alleges that defendants touched plaintiffs in a harmful and offensive manner, including subjecting plaintiffs to unwanted sexual contact. Dkt. #83, ¶ 278. This cause of action pertains to the actions of law enforcement officers from the City of North Tonawanda on July 20, 2016 with respect to an alleged probation violation and does not allege the personal involvement of any Niagara County defendants.

### Fourteenth Amendment - Due Process

Plaintiffs' amended complaint alleges that defendants, including Niagara County Sheriff James R. Voutour, deliberately defamed John Karcz by providing press releases, which included photographs, to at least 12 news and social media outlets.[12]

---

[12] In response to defendants' motion to dismiss the complaint, plaintiffs' counsel attached several new stories published after Niagara County Sheriff Voutour contacted numerous media outlets, including a Buffalo News article dated June 9, 2015, titled, "Marijuana-growing operation found in North Tonawanda basement" which states:

> A North Tonawanda man was arrested Monday afternoon when police found a marijuana-growing operation in his basement.
>
> John W. Karcz Jr., 41, of 357 Daniel Drive, was charged with growing cannabis by an unlicensed person and two counts of endangering the welfare of a child because there were two preschool children in the home.
>
> A total of 21 plants were seized under a search warrant served by the Niagara County Sheriff's Office and Drug Task Force and the North Tonawanda Police Department.
>
> Niagara County Drug Task Force Capt. Scott Lombardo called the growing operation and related equipment a fire hazard. He also noted there was mold in the house.
>
> Karcz, who has a previous drug sales record from the 1990s, was found in possession of a shotgun and a 9 mm carbine, which he is not allowed to possess as a convicted felon. He was charged with fourth-degree criminal possession of a weapon and second-degree criminal contempt.
>
> All the charges are misdemeanors, but the investigation is ongoing. Both Karcz and his wife, Jennifer, could face felony charges and additional endangering charges depending on the weight of the marijuana plants, Lombardo said.
>
> John Karcz was in the Niagara County Jail in lieu of $500 bail.
>
> The Karcz family and their older daughter, who is now 5, were in the news in 2013 after she and a neighbor boy wandered away from the house and into the woods. A search party was formed and shortly afterward police found the children hiding in the woods.

Dkt. #80-2, pp.8-9.

Dkt. #83, ¶¶ 155-156.  Plaintiffs' seventh cause of action alleges that this conduct shocks the conscience; interferes with rights implicit in the concept of ordered liberty; offends judicial notions of fairness; is offensive to human dignity; and was taken with deliberate indifference to plaintiffs' protected rights. Dkt. #83, ¶ 290. Plaintiffs also allege that the stigma to plaintiffs' reputation caused by the defendants resulted in the termination of John Karcz' employment and deprived them of their property interests without due process of law. Dkt. #83, ¶¶ 292-293.

Defendants argue that plaintiffs are attempting to frame their claims of defamation as due process violations but have not and cannot plead that the release of information by Niagara County Sheriff James Voutour are sufficiently derogatory to injure their reputations; capable of being proven false; or constitute a state-imposed burden or deprivation of plaintiffs' material status or rights. Dkt. #86-4, p.20.

Plaintiffs respond that Niagara County Sheriff Voutour "contacted at least 12 media publishers to give 'press releases' of plaintiffs' arrest [sic] based upon the June 8, 2015 illegal search of their home; posted or caused to be posted press releases of the Plaintiffis' arrest [sic] on the official Facebook account for the Niagara County Sheriff's Department; and contacted or caused to be contacted Mr. Karcz's employer to notify him that Mr. Karcz had been arrested and falsely charged with various crimes stemming from the June 8, 2015 search." Dkt. #89-2, p.20. Plaintiffs' further argue that Sheriff Voutour "disclosed or caused to be disclosed the address of Plaintiffs' home, photographs of the Plaintiffs and their home, and the nature of the prejudicial but never proven allegations and charges lodged against the Plaintiffs. Dkt. #89-2, p.21. As a

result, John Karcz was fired from his job and was unable to secure employment despite securing nearly 100 interviews and submitting over 700 applications nationwide. Dkt. #89-2, p.21.

Defendants reply that plaintiffs have failed to allege a "stigma plus" claim because they have not plead and cannot prove that statements regarding their arrest and confiscation of contraband are capable of being proven false given their admissions and guilty pleas. Dkt. #90-1, pp.8-9.

The substantive component of the Due Process Clause of the Fourteenth Amendment protects individual liberty against certain government actions regardless of the procedure used to implement them. *Collins v. City of Harker Heights, TX*, 503 U.S. 115, 125 (1992). However, it is well-established that substantive due process protections extend only to those interests that are "implicit in the concept of ordered liberty," and "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Smith v. Hogan*, 794 F.3d 249, 255-56 (2d Cir. 2015), *quoting Palko v. Connecticut*, 302 U.S. 319, 325 (1937) and *Reno v. Flores*, 507 U.S. 292, 303 (1993), *cert. denied*, 580 U.S. 1019 (2016). "Because employment rights are state-created rights and are not 'fundamental rights created by the Constitution, they do not enjoy substantive due process protection." *Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003). Thus, to the extent that plaintiff's amended complaint alleges that his employment was terminated in violation of his substantive right to due process, it is recommended that this claim be dismissed.

"A person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause or create a cause of action under § 1983." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004); *See Jordan v. N.Y.*, 24-CV-6152, 2024 WL 4607726, at *4 (W.D.N.Y. Oct. 29, 2024) ("defamation by a state actor is not a deprivation of 'liberty' or 'property' within the meaning of the Fourth Amendment, unless accompanied by some interest other than loss of reputation."). Thus, to allege a cognizable claim under 42 U.S.C. § 1983 predicated upon an act of defamation, a plaintiff must allege what is colloquially referred to as a "stigma-plus" claim, which is a stigmatizing statement plus a deprivation of a tangible interest without due process of law. *Balentine v. Tremblay*, 554 Fed. App'x 58, 60 (2d Cir. 2014).

To establish stigma-plus, a plaintiff must plausibly allege two elements: (1) the utterance of a statement sufficiently derogatory to injure a plaintiff's reputation and which is capable of being proven false plus (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights without adequate process. *Id*. For example, the placement of an individual on a government registry of child abusers, where potential employers are required not only to consult, but to justify in writing to the state a decision to hire an individual who appears on the registry, satisfies the plus requirement because the refusal of employment is based on more than an individual's damaged reputation, but on the added burden an offer of employment would place on employers. *Valmonte v. Bane*, 18 F.3d 992, 1001-02 (2d Cir. 1994). However, allegations of loss of private employment are insufficient. *Id.*; *See Valmonte*, 18 F.3d at 1001 (2d Cir. 1994) (negative impact on "job prospects, or, for that matter, romantic

-42-

aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation," insufficient for purposes of the plus).

In the instant case, even assuming that the plaintiffs satisfied the first element of a stigma plus claim, they have failed to plausibly allege a material state-imposed burden or alteration of their rights without due process. As a result, it is recommended that the seventh cause of action be dismissed.

### Fourth Amendment - Conspiracy

Plaintiffs' eighth cause of action alleges that defendants conspired to illegally enter and search plaintiffs' home. Dkt. #83, ¶¶ 297-299. In support of this claim, plaintiffs allege that "the North Tonawanda Police Department, The Niagara County Sheriff's Department, in conspiracy with and under direction from The Niagara County District Attorney's Office intentionally and/or recklessly withheld potentially exculpatory information from the court." Dkt. #83, ¶ 141. The Niagara County District Attorney's Office is alleged to have conspired to deprive plaintiffs of access to substantial justice by advising the North Tonawanda Police Department and Niagara County Drug Task Force "in investigative and search warrant affidavit production." Dkt. #83, ¶ 144.

Defendants argue that plaintiffs' conspiracy claim is conclusory. Dkt. #86-4, p.23.

Plaintiffs respond that the amended complaint "goes into painstaking detail to explain the conspiracy that existed between the North Tonawanda Police

Department, County of Niagara County Sheriff's Department and Drug Task Force, and County of Niagara District Attorney's Office who all worked together to obtain an improper search warrant and arrest the Plaintiffs based upon an illegal search of their home on June 8, 2015." Dkt. 89-2, pp.21-22. More specifically, plaintiffs respond that they have alleged sufficient facts to render it  plausible that each defendant who searched plaintiffs' home on June 8, 2015 knew that the search warrant was not based upon probable cause and was executed in violation of plaintiffs' Fourth Amendment rights. Dkt. #89-2, p.22.

Defendants reply that plaintiffs cannot plead conspiracy because the June 8, 2015 search was appropriate. Dkt. #90-1, p.9.

To prevail on a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages. *Ivery v. Baldauf*, 284 F. Supp.3d 426, 439 (W.D.N.Y. 2018), *quoting Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "To state a conspiracy claim, plaintiff must provide some factual basis supporting a meeting of the minds." *Id., quoting Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). "Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Id., citing Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *See also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."), *cert.*

-44-

*denied*, 464 U.S. 857 (1983). "The mere fact that the individual defendants were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim." *Id., quoting Gustafson v. Village of Fairport*, 106 F. Supp.3d 340, 352 (W.D.N.Y. 2015). "Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard." *Brewster v. Nassau Cty.*, 349 F. Supp.2d 540, 547 (E.D.N.Y. 2004).

Where, as here, plaintiffs allegations of conspiracy rest upon unsupportable claims of constitutional violations, the conspiracy claim must also be dismissed. *See Milton v. McClintic*, 22-CV-6077, 2022 WL 4852825, at *3 (W.D.N.Y. Oct. 4, 2022). Thus, plaintiffs cannot plausibly allege a conspiracy to procure an illegal search warrant where, as here, they have not plausibly alleged that the search warrant application was predicated upon a material false statement or omission. Similarly, plaintiffs cannot plausibly allege a conspiracy to conduct an illegal search where they have not plausibly alleged that the search warrant was facially invalid. Although plaintiffs have set forth plausible claims that the search of the boat exceeded the scope of the search warrant; that the execution of the search warrant caused loss and destruction of property; and that law enforcement officers failed to intervene to prevent the alleged theft and intentional destruction of plaintiffs' property, plaintiffs have failed to allege any facts that would suggest any agreement between the City of North Tonawanda and Niagara County law enforcement officers, let alone the Niagara County District Attorney's Office, to execute the search warrant illegally. As set forth above, allegations that law enforcement officers from both the City of North Tonawanda and Niagara County were personally involved in the allegedly improper execution of the

search warrant are insufficient to support a claim that defendants conspired to execute the search warrant outside of constitutional limits. Accordingly, it is recommended that plaintiffs' conspiracy claim be dismissed.

### Municipal Liability

Plaintiffs' ninth cause of action alleges that the City of North Tonawanda[13] and Niagara County each engaged in a policy, custom and practice of failing to supervise and train employee law enforcement officers. Dkt. #83, ¶¶ 302-321. As to the County of Niagara, plaintiffs allege "policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual defendants." Dkt. #83, ¶ 308. Plaintiffs further allege that the County of Niagara was aware of several complaints of police misconduct and engaged in a policy or custom of inadequately and improperly investigating citizen complaints of police misconduct and inadequately training, supervising and disciplining employees. Dkt. #83, ¶¶ 313, 315, 317, 319 & 321.

The County defendants argue that plaintiffs have failed to plead facts suggesting a pattern of similar constitutional violations by untrained employees that would have placed Niagara County on notice that its training was deficient or that its officers were persistently violating citizens' constitutional rights. Dkt. #83, pp.21-22. Unlike plaintiffs' allegations of multiple encounters with respect to the City of North Tonawanda defendants, the County of Niagara notes that its law enforcement officers

_____

[13] In a prior Decision and Order, Judge Vilardo determined that plaintiffs had plausibly alleged that the City of North Tonawanda was on notice that its law enforcement officers were acting unlawfully while executing search warrants so as to allow a claim against the City defendants in their official capacities. Dkt. #81, p.7.

were involved in a single encounter with plaintiffs which cannot plausibly support the existence of a pattern of constitutional violations as required to establish notice of potential training deficiencies. Dkt. #83, p.22. With respect to plaintiffs' claims of prosecutorial misconduct and malicious prosecution, the County defendants again argue that plaintiffs have failed to allege a pattern or practice of similar constitutional violations that would have placed the County of Niagara on notice of any failure to train or supervise. Dkt. #83, p.22.  In any event, absent a plausible allegation of an underlying constitutional violation, the County defendants argue there can be no municipal liability. Dkt. #86-4, p.22.

Plaintiffs respond that DA Voutour is alleged to have initiated, participated in, and personally condoned repeated and ongoing violations of plaintiffs' civil rights by directing or condoning the deliberate refusal by the Niagara County Sheriff's Department to disclose potentially exculpatory information related to the June 8, 2015 search; refusing to discipline officers for their deliberate violations of plaintiffs' civil rights and, instead, publicly voicing highly prejudicial accusations against the plaintiffs and causing plaintiff's employer to be notified of such accusations. Dkt. #89-2, p.25.

Defendants reply that plaintiffs have failed to allege any municipal policy or custom that was deliberately indifferent to likely constitutional violations. Dkt. #90-1, p.9.

Because the Court recommends that plaintiffs' claims with respect to probable cause for the issuance of the search warrant and the termination of John

Karcz's employment following disclosure of his arrest be dismissed for failure to plausibly allege constitutional violations, and because the excessive force claim does not allege the personal involvement of any County defendants, the Court addresses the viability of plaintiffs' *Monell* claim solely with respect to the execution of the search warrant on June 8, 2015. *See Rankel v. Somers*, 999 F. Supp.2d 527, 550 (S.D.N.Y. 2014) ("Absent an underlying constitutional violation, a *Monell* claim cannot lie."), *citing Monell*, 436 U.S. at 691.

"Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself." *Ortiz v. Wagstaff*, 523 F. Supp.3d 347, 361 (W.D.N.Y. 2021). To state a claim for municipal liability, a plaintiff must plausibly allege an official policy or custom that causes the plaintiff to be subjected to the denial of a constitutional right. *Zahara v. Town of Southold*, 48 F.3d 674, 695 (2d Cir. 1995). In limited circumstances, a municipality may also be liable for its failure to train, supervise, or discipline its employees. *Id.; See Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007) (failure to train or supervise employees may be official policy or custom); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("persistent failure to discipline" employees may show a "policy of ratification of unconstitutional conduct.").

When a plaintiff pursues liability under a theory of failure to train, supervise, or discipline, plaintiff must also demonstrate that the municipal policymaker acted with deliberate indifference. *Id.; See Wray*, 490 F.3d at 195 (The failure to train or supervise city employees may constitute an official policy or custom if the failure

amounts to deliberate indifference to the rights of those with whom the city employees interact.). To establish deliberate indifference, a plaintiff must show that: (1) a policymaker knows to a moral certainty that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Id.; See Wray*, 490 F.3d at 195-196.

Deliberate indifference may also be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to the plaintiff. *Id.; See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012). Generally speaking, a pattern of similar constitutional violations by untrained employees will be necessary to demonstrate deliberate indifference based upon a failure to train. *Id.; See Connick v. Thompson*, 563 U.S. 51, 62 (2011). Conversely, the failure to discipline a single police officer for a single incident of illegality is insufficient to establish a policy of acquiescing in or ratifying illegal conduct. *Id.; See Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020).

In contrast to plaintiffs' allegations against the City of North Tonawanda, which alleged a history of interactions between plaintiffs and the City of North Tonawanda Police going back as far as 2013, as well as a complaint by plaintiffs to the North Tonawanda Chief of Police about the search of their home on May 18, 2015,

plaintiffs' amended complaint fails to allege that any County defendants had any interaction with plaintiffs prior to June 8, 2015 or any factual basis to support their boilerplate allegations of a Niagara County policy and/or custom. "Put simply, to allege there is a policy does not make it so." *Flannery v. City of Rochester,* 640 F. Supp.3d 267, 278 (W.D.N.Y. 2022) (internal quotation omitted);  *See Triano v. Town of Harrison, N.Y.*, 895 F. Supp.2d 526, 535 (S.D.N.Y. 2012) ("[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."). Accordingly, it is recommended that the ninth cause of action be dismissed as to the County defendants.

Punitive Damages

Defendants argue that none of the conduct alleged rises to the level where punitive damages would be appropriate. Dkt. #86-4, pp.23-24. In addition, defendants argue that punitive damages cannot be obtained from a municipality. Dkt. #86-4, p.24.

Plaintiffs respond that the appalling conduct alleged in the complaint can only be described as evil and malicious and is the exact type of conduct that punitive damages are intended to deter. Dkt. #89-2, p.26.

Niagara County replies that punitive damages are not available from a municipality. Dkt. #90-1, p.11. The individual defendants argue that plaintiff has failed to assert any facts that would suggest the wanton, reckless or malicious intent required to support an award of punitive damages. Dkt. #90-1, p.10.

It is well established that punitive damages are not available against municipalities or against individuals sued in their official capacities, but may be awarded against defendants sued in their individual capacities for claims brought pursuant to 42 U.S.C. § 1983. *Durr v. Slator*, 558 F. Supp.3d 1, 44 (N.D.N.Y. 2021); *Lin v. County of Monroe*, 66 F. Supp.3d 341, 362 (W,D,N,Y. 2014). Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Lin*, 66 F. Supp.3d at 44.

As to the individual County defendants, the only remaining claim that plausibly suggests such reckless behavior is the claim of intentional theft and destruction of property during the execution of the search warrant. As a result, it is recommended that defendants' motion to dismiss plaintiffs' demand for punitive damages be denied with respect to Capatin Lombardo and Deputy Dworzanski.

## CONCLUSION

For the reasons set forth above, the motion to strike (Dkt. #89), is denied.

Furthermore, it is recommended that the County of Niagara defendants' motion to dismiss (Dkt. #86), be granted except for:

(1) plaintiffs' claim that Captain Lombardo and Deputy Sworzanski were personally involved in the theft and destruction of personal property and/or failed to

intervene as other law enforcement officers engaged in the theft and destruction of personal property during the search on June 8, 2015; and

(2) plaintiffs' claim that Captain Lombardo and Deputy Sworzanski exceeded the scope of the search warrant by searching the boat in front of 351 Daniel Drive and/or failed to intervene as other law enforcement officers searched the boat in front of 351 Daniel Drive during the search on June 8, 2015.

As a result, it is recommended that The County of Niagara, Niagara County Sheriff James R. Voutour, Niagara County District Attorney Michael Violante, Niagara County Assistant District Attorney Laura T. Bitner, and Niagara County Assistant District Attorney Kevin D. Canali be dismissed from this action.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985);  *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

**DATED:      Buffalo, New York**
**December 27, 2024**

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**